**Terry Kent RINGSTAFF,
Petitioner–Appellant,**

v.

**Dale HOWARD and The Attorney General of the State of Alabama, Don Siegelman, Respondents–Appellees.**

No. 87–7573.

United States Court of Appeals,
Eleventh Circuit.

Dec. 8, 1988.

Order Granting Rehearing In Banc
Feb. 6, 1989.

<br>Janie Baker Clarke, Montgomery, Ala., for petitioner-appellant.

Don Siegelman, Atty. Gen., Alabama State House, Cecil G. Brendle, Jr., Asst. Atty. Gen., Montgomery, Ala., for respondents-appellees.<br>

Before RONEY, Chief Judge, JOHNSON and SMITH*, Circuit Judges.

JOHNSON, Circuit Judge:

This case involves an appeal from the district court's denial of a petition for writ of habeas corpus brought under 28 U.S.C.A. § 2254. We reverse and direct the district court to grant the writ.

## I. BACKGROUND

Terry Ringstaff was arrested for the murder of Mary Henderson on June 11,

* Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1980.[1] On November 7, 1980, Ringstaff made his first demand for a speedy trial. He later reasserted his demand on March 13, 1981, and October 13, 1981. On June 24, 1981, Ringstaff requested and was granted a psychiatric evaluation. On January 22, 1982, the Alabama Lunacy Commission found him competent to stand trial. Ringstaff was finally tried for capital murder on May 5, 1982. He was found guilty of the lesser included offense of murder on May 6, 1982, and eventually was sentenced to prison for life. Ringstaff exhausted his state remedies and brought this petition for writ of habeas corpus. The U.S. Magistrate held a hearing and subsequently denied the petition. The Magistrate's findings were adopted by the district court. In this appeal, Ringstaff raises only the claim that he was denied his constitutional right to a speedy trial.

## II. DISCUSSION

The Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), set forth a four-part balancing test for evaluating claims of the denial of the constitutional right to a speedy trial. The factors to be weighed are: length of delay; reason for delay; defendant's assertion of the right; and prejudice to defendant. *Id.* at 530. Under *Barker* the length of the delay must be "presumptively prejudicial" in order to trigger an inquiry into the other three factors. Once the balancing is commenced, no single factor is dispositive. However, we must note that although Ringstaff's defense need not necessarily have been impaired, *Moore v. Arizona*, 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d

183 (1973), unless the first three factors weigh heavily against the government, Ringstaff must demonstrate actual prejudice. *United States v. Mitchell*, 769 F.2d 1544, 1547 (11th Cir.1985), *cert. denied*, 474 U.S. 1066, 106 S.Ct. 819, 88 L.Ed.2d 792 (1986).

▄▄ The district court below held that the delay of 23 months was serious and presumptively prejudicial.[2] The state makes no objection to this finding, and we agree. We also agree with both parties and the district court that Ringstaff raised the speedy trial issue sufficiently early. Therefore, Ringstaff's speedy trial claim depends primarily upon the reason for the delay. *See United States v. Loud Hawk*, 474 U.S. 302, 315, 106 S.Ct. 648, 656, 88 L.Ed.2d 640 (1985) ("The flag all litigants seek to capture is the second factor, the reason for delay."). If the reason for delay also weighs heavily against the state, then Ringstaff need not show actual prejudice to prevail, *Moore*, 414 U.S. at 26, 94 S.Ct. at 189, but if the delay was reasonable, then he must show actual prejudice. *Mitchell*, 769 F.2d at 1547.

### 1. *Reason for Delay*

▄ The first 9 months of delay were due primarily to the state's desire to wait for the decision of the Supreme Court of Alabama in *Beck v. State*, 396 So.2d 645 (Ala.1981), before bringing its case.[3] The next 7 months of delay are attributable to Ringstaff's request for psychiatric evaluation.[4] The remaining 7 months of delay are unexplained.

---

1. The factual circumstances surrounding the crime are fully set forth in *Ringstaff v. State*, 451 So.2d 375 (Ala.Crim.App.1984).

2. This Court has previously held that a 15 month delay—even in prosecuting a complex conspiracy case—can be enough to trigger the *Barker* balancing. *United States v. Avalos*, 541 F.2d 1100, 1111 (5th Cir.), *cert. denied*, 430 U.S. 970, 97 S.Ct. 1656, 52 L.Ed.2d 363 (1977).

3. The Alabama Supreme Court's decision in *Beck* was handed down, as modified upon denial of rehearing, on May 6, 1981, some 9 months after Ringstaff was arrested. The three month

delay between the *Beck* decision and Ringstaff's request for a psychiatric examination is unexplained. No evidence was offered to show why he could not have been tried immediately after the *Beck* decision. The state admitted at oral argument that its investigation and trial preparation had long been completed by that time.

4. Delays caused by the defendant are excluded from speedy trial claims. *United States v. O'Bryant*, 775 F.2d 1528, 1531–32 (11th Cir.1985) (Speedy Trial Act tolled during defendant's pretrial motions); *Hill v. Wainwright*, 617 F.2d 375, 378 (5th Cir.1980) (constitutional speedy trial claim).

A total of 16 months of delay is directly attributable to the state, with the majority of that time being consumed by the state's decision to await the Alabama Supreme Court's decision in *Beck*. Neither appellant nor appellee was able to cite a single case from any jurisdiction dealing with the propriety of delaying a criminal trial pending a decision in another factually unrelated case. However, guidance in evaluating the legitimacy of the delay can be found in *Barker v. Wingo* itself.

The Supreme Court in *Barker* stated that "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." 407 U.S. at 531, 92 S.Ct. at 2192. The Court also noted that "it is improper for the prosecution intentionally to delay 'to gain some *tactical advantage* over [defendants] or to harass them.'" *Id.* at 531 n. 32, 92 S.Ct. at 2192 n. 32 (emphasis added), *citing United States v. Marion*, 404 U.S. 307, 325, 92 S.Ct. 455, 466, 30 L.Ed.2d 468 (1971). *See also Avalos*, 541 F.2d at 1111–12 (disapproving of delay caused by "court-shopping"). Therefore, the state's motivation is the key area of inquiry.

On June 20, 1980, the week after Ringstaff's arrest, the Supreme Court handed down its decision in *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). The Court held unconstitutional that portion of the Alabama death penalty statute, Ala.Code § 13–11–1 *et seq.* (1975) (repealed), which forbade lesser included offense instructions in capital cases. *See* Ala.Code § 13–11–2(a).[5] In reversing Beck's conviction, the Court essentially invalidated the last 14 words of § 13–11–2(a) of the death penalty statute.

One important issue remained after *Beck*. Was the unconstitutional clause in the Alabama death penalty statute severable? On March 6, 1981, the Alabama Supreme Court finally held that it was severable, thereby upholding the rest of Alabama's death penalty framework. *Beck v. State*, 396 So.2d 645 (Ala.1981). Between the Supreme Court's decision on June 20, 1980, and the Alabama decision on March 6, 1981, the validity of the death penalty in Alabama was in doubt. Recognizing this situation, the Alabama Court of Criminal Appeals praised the state's delay in trying Ringstaff in the following terms:

> We are of the opinion that it was in the interest of justice according to law, the guiding star of judicial proceedings, that the trial court, the parties and all others concerned with this case, handled it with commendable caution and circumspection rather than rushing ahead without chart or compass to guide them.

*Ringstaff v. State*, 451 So.2d 375, 381 (Ala. Crim.App.1984). The state successfully argued before the Alabama appellate court that the delay actually benefited Ringstaff because he was eventually convicted on a lesser included offense and not capital murder. However, the state explained before this Court that the "chart or compass" for which it waited was the re-affirmation of the validity of the Alabama death penalty statute.[6]

Having reviewed the state's explanations and the decisions of the Supreme Court and the Alabama Supreme Court in *Beck*, we find that the state delayed its prosecution for primarily one reason—it thought that if it brought Ringstaff to trial promptly, the trial court might not have considered giving Ringstaff the death penalty. It seems likely that a trial court would have been hesitant to sentence a defendant to death before the Alabama Supreme Court's reassurance in *Beck* that the death penalty could be constitutionally administered un-

---

**5.** Before its repeal in 1981, Ala.Code § 13–11–2(a) read, "If the jury finds the defendant guilty, it shall fix the punishment at death when the defendant is charged by indictment with any of the following offenses and with aggravation, which must also be averred in the indictment, *and which offenses so charged with said aggravation shall not include any lesser offenses*" (emphasis added).

The last phrase in the § 13–11–2(a) was construed by Alabama courts to preclude instruction on lesser included offenses in capital cases. *See Beck*, 447 U.S. at 629 n. 3, 100 S.Ct. at 2385 n. 3.

**6.** At oral argument, the state admitted that this decision to delay was a "tactical maneuver."

der the then existing framework, minus the clause struck down by the Supreme Court. The trial court might even have held that the indictment itself on the capital murder charge was flawed, given that the validity of the Alabama capital murder scheme had been called into doubt.[7]

The reason for the delay seems primarily to have been the state's desire to enhance Ringstaff's chances of receiving the death penalty. This is exactly the type of maneuver "to gain some tactical advantage" that is forbidden by *Barker*, 407 U.S. at 531 n. 32, 92 S.Ct. at 2192 n. 32. *See also Gravitt v. United States*, 523 F.2d 1211, 1216 (5th Cir.1975) ("a deliberate delay to prejudice the defense is weighed heavily against the government"); *United States v. Baron*, 336 F.Supp. 303, 305–06 (S.D.N.Y.1971) (delay caused by prosecution's desire to try eleven defendants serially due to novel question of law presented in all cases held to be dilatory).

The rationale put forth by the state and the Alabama Court of Criminal Appeals, that the delay actually benefited Ringstaff, is flawed. The state claims that the Alabama Supreme Court's decision in *Beck* permitted Ringstaff to be convicted of a lesser non-capital offense rather than capital murder. That simply ignores the import of the Supreme Court's previous decision in *Beck*. After the Supreme Court had spoken, all state courts were required to charge lesser included offenses in their death penalty instructions by operation of the supremacy clause. *See* U.S. Const. Art. VI, § 2. The Alabama Supreme Court gave Ringstaff nothing he did not already have and, in fact, took away his argument that he could not be put to death at all. The delay pending the Alabama Supreme Court's decision only made it much more likely that Ringstaff would be put to death.

### 2. *Prejudice*

■■ The first three factors weigh heavily against the state, so Ringstaff need

not show actual prejudice. *Prince v. Alabama*, 507 F.2d 693, 707 (5th Cir.), *cert. denied*, 423 U.S. 876, 96 S.Ct. 147, 46 L.Ed.2d 108 (1975) ("prejudice is immaterial where consideration of the other three factors ... coalesce [sic] in the defendant's favor"). *See Moore v. Arizona*, 414 U.S. at 26, 94 S.Ct. at 189 (error to require prejudice to defendant); *United States v. Mitchell*, 769 F.2d at 1547. The state had a "constitutional duty to make a diligent, good-faith effort" to bring Ringstaff promptly to trial. *Smith v. Hooey*, 393 U.S. 374, 383, 89 S.Ct. 575, 579, 21 L.Ed.2d 607 (1969). The state made no claim that it lacked the evidence or witnesses necessary to try Ringstaff. *See Barker*, 407 U.S. at 531, 92 S.Ct. at 2192 (reasonable amount of time necessary to find witness is excusable); *United States v. Barragan*, 793 F.2d 1255, 1258 (11th Cir.1986) (Speedy Trial Act time period tolled while essential witness was unavailable). In spite of Ringstaff's objections, the state kept him incarcerated until the time it knew it could confidently ask a court to impose death. Such an excuse—potentially prejudicial in the extreme to a defendant—cannot justify burdening a defendant's constitutional right to a speedy trial.

For the foregoing reasons, the denial of the petition is REVERSED and REMANDED with directions to grant the writ.

RONEY, Chief Judge, dissenting:

I respectfully dissent. The Court concludes that Ringstaff need not demonstrate prejudice from the delay in bringing him to trial in order to have his conviction set aside because the first three factors of the *Barker* test weigh heavily against the Government. Critical to its reversal is the decision that it was improper for the state to delay the prosecution pending a determination by the Alabama Supreme Court as to the validity of the state's death penalty statute. In my judgment, the State could

---

7. The State sought its indictment for capital murder *after* the U.S. Supreme Court's decision in *Beck*. Any potential flaw in the indictment, *i.e.*, charging only capital murder under the

infirm statute and not charging a lesser included offense, would have been the handiwork of the prosecution.

legitimately wait a reasonable time until this critical issue of law was settled so that Ringstaff had to show he actually suffered from the delay. Since he has failed to make such a showing, I would affirm the district court's denial of habeas corpus relief.

Ringstaff was brought to trial and convicted of murder some 23 months following his arrest, a period which I assume for purposes of this dissent to raise Sixth Amendment concerns, although there is no precise time for the constitutional right to a speedy trial to be implicated. *Barker v. Wingo*, 407 U.S. 514, 521, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101 (1972) ("We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate.")

Seven of those months are attributable to the defendant's request for a psychiatric evaluation and are excused from the speedy trial computation. *United States v. O'Bryant*, 775 F.2d 1528 (11th Cir.1985).

Nine of the remaining 16 months involve a decision by the Government to wait until the Alabama Supreme Court rendered its decision in *Beck v. State*, 396 So.2d 645 (Ala.1981). In that case, the Alabama Supreme Court held that the provision in state's death penalty statute prohibiting lesser offense instructions—struck down as unconstitutional by the United States Supreme Court in June 1980—could be severed from the rest of the statute.

Until the *Beck* decision, the validity of the State's entire capital statutory scheme was in doubt. As the Alabama Court of Criminal Appeals stated, the Government exercised "commendable caution and circumspection rather than rushing ahead" when it chose not to proceed to trial against Ringstaff on capital murder charges pending a resolution of the issue. *Ringstaff v. State*, 451 So.2d 375, 381 (Ala. Crim.App.1984), *cert. denied*, No. 83–652 (Ala., June 1, 1984). Had the Government pursued the prosecution, it faced the possibility that Ringstaff would have been convicted of capital murder under a statute later determined to be invalid. It would then have been forced to retry Ringstaff, a particularly inefficient use of resources, especially where it is likely that Ringstaff would have been convicted at least of the very same charge for which he now appeals.

Just as the courts have found reasonable the delay while pretrial motions and interlocutory appeals are resolved, it was reasonable for the Government to wait until this very important issue of law was settled before bringing Ringstaff to trial. *See United States v. Loud Hawk*, 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986) (Government's interlocutory appeal which took two years accorded little weight in *Barker* balancing); *Government of the Virgin Islands v. Burmingham*, 788 F.2d 933 (3d Cir.1986) (18-month delay between indictment and trial justified where Territorial Court sought clarification of applicability of Speedy Trial Act to criminal proceedings in its court); *see also Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (although not addressing speedy trial, Court recognizes in the context of a double jeopardy claim that resolution of some issues prior to trial is appropriate).

There is no evidence that the delay was due to bad faith or a dilatory purpose by the Government. *See Loud Hawk*, 474 U.S. at 316, 106 S.Ct. at 656. The panel asserts that the Government's motive was to increase the likelihood that Ringstaff would receive the death penalty and that this motive was an improper maneuver to gain some "tactical advantage" over the defense. It speculates that the trial court may have been hesitant to sentence a defendant to death because of the uncertainty surrounding Alabama law prior to *Beck*. The district court made no finding of fact that such was the State's motive and such a finding is not supported by the evidence. This is not a case where the Government delayed to harass the defendant or to specifically interfere with the defense, such as delaying the trial to prevent a particular witness from testifying. *United States v. Avalos*, 541 F.2d 1100, 1113 (5th Cir.1976) *cert. denied*, 430 U.S. 970, 97 S.Ct. 1656, 52 L.Ed.2d 363 (1977); *cf. Arrant v. Wainwright*, 468 F.2d 677, 681 (5th Cir.1972) (two-year delay in murder trial not justified when only reason offered by state attorney was that he "did not want to see [the defendant] be acquitted of this crime."), *cert. denied*, 410 U.S. 947, 93 S.Ct. 1369, 35 L.Ed.2d 613 (1973). Rather, the Government merely waited to see if it could legally proceed with a capital murder prosecution.

The courts should not lightly dispense with the actual prejudice requirement be-

cause to do so necessarily results in the "severe remedy of dismissal of the indictment." *Barker*, 407 U.S. at 522, 92 S.Ct. at 2188. That is, the three *Barker* factors must indeed weigh *heavily* against the Government before prejudice should be presumed. Indeed, in *Barker* itself there was a *five-year* delay between the defendant's arrest and trial with much of that time attributable to the State's desire to wait until the conviction of a co-defendant whose testimony was believed necessary to the defendant's conviction. Although noting that the delay was "too long a period," the Court nonetheless proceeded to the analysis of whether the defendant had been prejudiced by it, ultimately concluding he had not.

Where, as here, the delay was not the result of a deliberate attempt to "hamper the defense," it should be afforded little weight in the balance. Thus, I would require Ringstaff to show he suffered actual prejudice in order to prevail. The Court in *Barker* identified three interests which the Speedy Trial right was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." 407 U.S. at 532, 92 S.Ct. at 2193. Of these three interests, the Supreme Court characterized the third as being the most significant.

The only evidence of impairment to his defense was Ringstaff's testimony that he was unable to contact a particular witness named "Larry" who could have established an alibi for him. That complaint goes to the fact of his incarceration, an issue that he has not raised, and not to the length of time between his arrest and trial. It is at least arguable that more time, not less, was needed in order for Ringstaff to find this man and that his only claim is that he should have been free during the intervening period. At any rate, as the district court found and Ringstaff himself concedes, there were several alibi witnesses who did testify as to his whereabouts on the date of the murder and "Larry's" testimony was merely cumulative of the testimony already presented at trial.

Without some showing of actual prejudice, the district court's denial of a writ of habeas corpus should be affirmed.

## ON PETITION FOR REHEARING AND SUGGESTION FOR REHEARING IN BANC

Before RONEY, Chief Judge, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HATCHETT, ANDERSON, CLARK, EDMONDSON, and COX, Circuit Judges.

### BY THE COURT:

A member of this court in active service having requested a poll on the application for rehearing in banc and a majority of the judges of this court in active service having voted in favor of granting a rehearing in banc,

IT IS ORDERED that the above cause shall be reheard by this court in banc *with* oral argument during the week of June 5, 1989, on a date hereafter to be fixed. The clerk will specify a briefing schedule for the filing of in banc briefs. The previous panel's opinion is hereby VACATED.