638 So.2d 1270 (1994)
Tony C. RHYMES
v.
STATE of Mississippi.
No. 91-KA-00396.
Supreme Court of Mississippi.
June 16, 1994.
*1271 Shirley C. Byers, McTeer & Byers, Greenville, for appellant.
Michael C. Moore, Atty. Gen., Kenneth C. O'Neal, Sp. Asst. Atty. Gen., Jackson, for appellee.
*1272 Before DAN M. LEE, P.J., and BANKS and JAMES L. ROBERTS, Jr., JJ.
BANKS, Justice, for the Court:
On April 1, 1991, Tony C. Rhymes, then a twice-convicted felon, was convicted of burglary of an occupied dwelling and sexual battery and sentenced to terms of fifteen and thirty years in the Mississippi Department of Corrections. Following the trial, the circuit court dismissed the habitual offender charge. Here Rhymes challenges the convictions on two grounds:
(1) Denial of his constitutional right to a speedy trial; and
(2) The erroneous court-ordered amendment to the indictment changing the charge from sexual battery against a female under the age of fourteen years to a female over the age of fourteen years.
We reject his speedy trial claim but conclude that Issue (2) has merit and reverse and remand for a new trial.

I.
Rhymes was charged in a two-count indictment returned by the Washington County Grand Jury on June 27, 1990. In Count 2 Rhymes was charged with sexual battery of a female under the age of fourteen years under Miss. Code Ann. § 97-3-65(1) (1972). Count 1 charged him with the crime of burglary of an occupied dwelling under Miss. Code Ann. § 97-17-21 (1972). Additionally, the indictment charged that Rhymes was an habitual offender under Miss. Code Ann. § 99-19-81 (1972).
Rhymes was arrested on the same date the crimes were committed, and on June 6, 1990, requested a continuance and a preliminary hearing. He was arraigned July 7, 1990. On February 19, 1991, trial began. Following impaneling of the jury, the indictment was amended on state's motion changing "under" fourteen years to "over" fourteen years [Miss. Code Ann. § 97-3-65(2) (1972)]. At that point, a mistrial was declared by Circuit Judge Gray Evans. No order amending the indictment was entered until March 28, 1991. Judge Evans, in an order entered nunc pro tunc ruled the amendment, one of form, not substance, was permissible. Following a hearing conducted on March 27 before Circuit Judge Eugene Bogen, an order was entered on March 28, denying an ore tenus motion to quash the amended indictment.
Following a pretrial hearing on defense's motion to dismiss for violation of Rhymes' constitutional rights to a speedy trial, the trial began. The victim, Lisa Nettles, a female 26 years old at the time of the alleged crime, testified that Rhymes broke into her home and forced her to have oral sex. Her seven-year-old son was in the house at the time. Proof shows Nettles was Rhymes' former live-in girlfriend and the mother of four (three living) of his children.
Rhymes testified in his own defense and claimed that Nettles consented and brought charges because she got angry when he did not pay her for her service. Following his conviction and sentence on both counts of the indictment he perfected an appeal to this court in a timely manner.

II.

a.
A period of 266 days elapsed from Rhymes' arrest to the first trial which ended in a mistrial. Three hundred and five days elapsed from time of his arrest until the second trial and conviction on April 1, 1991. This delay is presumptively prejudicial under our precedents, see, e.g., Smith v. State, 550 So.2d 406, 408 (Miss. 1989), requiring inquiry into the other Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), factors:
(2) Reason for delay;
(3) Assertion of speedy trial; and
(4) Prejudice.
The record is silent as to the cause of delay which weighs against the state. The state argues that the record reflects that it was making plans for trial when it subpoenaed witnesses as early as November 13, 1990, and the circuit judge signed a transportation order on November 15 for Rhymes to be transported from Parchman to the Washington County Jail. A second order of transfer was signed by the judge on January 8, 1991. The defendant did not have witness *1273 subpoenas issued until February 14, 1991, and filed four pretrial motions on February 19, 1991. Those motions were not called up for ruling by the trial court until March 27, 1991. The state urges this Court to infer from these circumstances that the defendant was not ready for trial in November and that, perhaps he was searching for the witness, the victim's brother, who, it is claimed, the defendant was not able to "touch base" with after the delay.
The state argues that its negligence in preparation of the indictment is a neutral reason, not to be weighed "heavily" against it. Barker, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. Because the defendant agreed to the continuance granted as a result of the mistrial following the allowance of an amendment to the indictment, no time after February 18, 1991 should count.
While it is true that the record suggests the inference that the state contemplated a trial in November, there is no order establishing, or notice of, a trial date during that period. More importantly, there is nothing in the record which reflects that the defendant sought any delay at this time. Making plans for trial provides the state no excuse where there is nothing to show that the defendant took any action to frustrate those plans.
The fact that defendant filed pretrial motions in February and not in November does little to suggest a lack of readiness. No trial date was established in November. Moreover, three of the motions spoke to matters of course in trial proceedings (invocation of the rule of sequestration, request that all proceedings be recorded and transcribed and bifurcation of the habitual defendant issue) provide for by rule or practice without the necessity of a motion. The fourth was a motion in limine, addressing evidentiary matters, which is normally presented just prior to trial, if at all.
The state's argument that the delay caused by its negligent preparation of the indictment should not be weighed against it is equally without merit. Clearly the delay following the February mistrial was caused by the state's negligent indictment and negligent failure to correct it at an earlier time. The state can draw no comfort from defendant's acquiescence in a delay caused by the state's negligence and, as shown below, an erroneous ruling of the court urged by the state. Assuming that the allowance of the amendment was proper, any delay caused thereby is attributable to the state even if it does weigh "less heavily". Id.; Adams v. State, 583 So.2d 165, 168 (Miss. 1991). It follows that this factor weighs against the state.
The defendant filed a motion for a speedy trial on July 12, 1990, just 15 days after the indictment and only three days after his arraignment. The motion was filed simultaneously with defense's demurrer to the indictment. At that time, the defendant had not supplied the state the requested discovery. The defense never called the motion up for hearing, and seven months later the defendant filed four pretrial motions which were called to the court's attention on March 27, 1991. Not until March 29, 1991, did the defendant file a motion to dismiss for lack of speedy trial. That motion was brought to the court's attention on the day of trial, April 1, 1991. Defense counsel, when asked by the trial judge to explain why the motion was called up so late, stated: "It was through inadvertence."
The state asserts, based on the above that, as in Barker, the record supports the argument that Rhymes did not want a speedy trial. Barker, 407 U.S. at 535-36, 92 S.Ct. at 2194-95, 33 L.Ed.2d at 120. The argument that because Rhymes was obviously not ready for trial at the time that he filed his motion for a speedy trial is of little merit. First, the order of arraignment directed that all motions be filed within five days and not thereafter unless allowed by the court. More importantly, Rhymes did not seek, nor was he entitled to, an immediate trial. He sought a speedy trial. In fact he specifically sought trial at "this term" and failing that, dismissal and discharge. While the indictment was returned, the arraignment and the motion filed during the "vacation" term of the April term, the ensuing term, July, began the following Monday, July 16 and extended for seven weeks. It is not unreasonable to expect that the state could comply with discovery *1274 requests and be ready for trial during that term.
We do note, however, that filing an early demand for speedy trial is a fairly routine practice and is considered "boiler plate" by some prosecutors. Indeed the state in its brief attempts to discount the validity of this motion, asserting that defendant did not really want a speedy trial. There is nothing in the record to support the state's claim. We have already discussed the significance of the fact that the motion came before discovery. The fact that the motion to dismiss, once the alleged violation of the right had occurred, was not asserted until the eve of trial provides no basis for reasoning that the defendant did not want a trial to begin with. There is not one item in this record which shows that the defendant ever sought a moment's delay in this trial. What can be said, however, is that Rhymes never renewed his demand nor sought dismissal after it was clear that his request for trial at the July term was denied, and during the passage of two subsequent terms in 1990.
While it is true as the state notes, that the United States Supreme Court ultimately ruled against Barker on grounds that he did not really want a speedy trial, that court did so on a record which reflected no demand for speedy trial, no objection to 16 continuances granted and an inference that Barker gambled upon the acquittal of his co-defendant, the delay in whose trial occasioned the continuances. 407 U.S. at 534, 535, 92 S.Ct. at 2194. Here, not only was there a request for speedy trial, pro forma or not, there was no acquiescence in any continuances because the record shows no continuances to which Rhymes had an opportunity to object. What remains is the failure to raise a voice once the requested trial during the July term had been denied sub silencio.
The record does reflect that the state gathered physical evidence in June and submitted it for analysis, including analysis by the FBI. Some delay may have been attendant to securing an FBI report on its DNA testing. We have no record on which to determine the extent of any such delay, however. Moreover, Rhymes was well known to the victim and the only other eye witness, his seven-year-old son. DNA evidence was of little value. Rhymes did not claim mistaken identity and there is no suggestion that he could have in the absence of this evidence.
There is nothing in the record which suggests reason for the delay in this case that can be attributed to any party other than the state. Mere negligence weighs lightly against the state, however, compounded over time. Barker, 407 U.S. at 530-31, 92 S.Ct. at 2192, 33 L.Ed.2d at 117; Doggett v. U.S., 505 U.S. ___, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).
Barker lists three examples of prejudice which accused may suffer by delay:
(1) Oppressive pretrial incarceration;
(2) Anxiety and concern of the accused; and
(3) Impairment of the defenses.
Rhymes, a previously convicted felon, incarcerated and charged at the time of the trial with two other felonies, did not suffer anxiety. His post-arrest incarceration was not due to the charge in question. Rhymes was the only defense witness. The state's witness, Tristan Nettles (the victim's son), had difficulty responding to questions, working in the defendant's favor. Barker, 407 U.S. at 519-23, 92 S.Ct. at 2186-88, 33 L.Ed.2d at 111-12.
Defendant claims loss of a key witness that he was unable to contact. That witness was the victim's brother and the record reflects that the defense never requested that a subpoena be issued for him. The state argues that this reason was grounds for further delay as opposed to prejudice for lack of a speedy trial. While the state misses the mark in arguing this as a reason for the delay because there is no record support for that assertion, its point that the failure to locate the witness cannot be cited as prejudice is well taken. There is no indication that Rhymes had secured this witness at some time prior to trial and lost him because of delay. That fact and the fact that there was a total failure to attempt to secure his appearance by subpoena is fatal to the claim of actual prejudice.
*1275 Rhymes made no showing of anxiety or oppressive incarceration. He does claim in his brief that he was unable to participate in rehabilitative endeavors because of the pendency of these charges. That claim, however, was made for the first time on appeal. While it is clear that other charges were pending against Rhymes and that his parole was revoked on previous convictions, the record is not clear as to the role of the instant charge in that process. Rhymes has simply failed to produce evidence of oppressive incarceration or anxiety due to the pendency of this charge. The prejudice factor, then, weighs in favor of denial of the claimed violation of the right to speedy trial.
While it is true that in Doggett v. United States, 505 U.S. ___, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), the Supreme Court held that prejudice other than the presumptive prejudice is not always prerequisite to a dismissal on speedy trial grounds, that tolerance with governmental "negligence varies inversely with its protractedness." 505 U.S. at ___, 112 S.Ct. at 2693, 120 L.Ed.2d at 532. There the total delay was eight and one-half years between a conspiracy indictment and arrest, the last six of which were attributable to governmental negligence in pursuing the prosecution. The Court was concerned with the "costs of going forward with a trial whose probative accuracy the passage of time has begun by degrees to throw into question." Id. at ___, 112 S.Ct. at 2693, 120 L.Ed.2d at 531. Doggett was not made aware of his indictment until eight and one-half years after it was rendered, creating obvious if not tangibly demonstrable problems for mounting a defense.
Clearly the situation here before the court is a far cry from that in Doggett. Rhymes was tried less than eleven months after he was arrested. This is far from the "persistent neglect" which justified dismissal in Doggett. Id. at ___, 112 S.Ct. at 2693-94, 120 L.Ed.2d at 532. This is not the kind of protracted delay which compels dismissal in the absence of some showing of actual prejudice. Adams v. State, 583 So.2d 165 (Miss. 1991). Where, as here, the delay is neither intentional nor egregiously protracted, and where there is a complete absence of actual prejudice, the balance is struck in favor of rejecting Rhymes' speedy trial claim. Stogner v. State, 627 So.2d 815 (Miss. 1994) (25-month delay insufficient in absence of assertion of the right and material prejudice).

b.
The state confesses error in the amendment of the indictment, but argues that the error was harmless.
It is fundamental that courts may amend indictments only to correct defects of form, however, defects of substance must be corrected by the grand jury. Recently, this Court applied this rule in Griffin v. State, 584 So.2d 1274, 1275-76 (Miss. 1991):
An indictment may not be amended to change the nature of charge, except by action of the grand jury which returned the indictment. Akins v. State, 493 So.2d 1321, 1322 (Miss. 1986), citing Jones v. State, 279 So.2d 650, 651 (Miss. 1973). "To be permissible, the amendment to an indictment must be of form and not of substance." Id. citing Contreras v. State, 445 So.2d 543, 545 (Miss. 1984); Hannah v. State, 336 So.2d 1317, 1321 (Miss. 1976).
It is well settled in this state ... that a change in the indictment is permissible if it does not materially alter facts which are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant's case.

Wilson v. State, 574 So.2d 1324 (Miss. 1990) citing Ellis v. State, 469 So.2d 1256, 1258 (Miss. 1985), quoting from Shelby v. State, 246 So.2d 543, 546 (Miss. 1971).
In Quick v. State, 569 So.2d 1197, 1199 (Miss. 1990), this Court held the amendment in that case one of substance and stated:
Art. 3, sec. 27 of the Mississippi Constitution requires an indictment before the prosecution for felonies, except in cases arising in the land or Naval forces, or the military when in actual service. State v. Sansome, 133 Miss. 428, 97 So. 753 (1923). This provision has been in each of the constitutions which the people of the State of Mississippi have established. It is very *1276 clear that, from the beginning, the people of Mississippi have ordained that they not be prosecuted for felonies except upon the indictment by a grand jury. It has been the law since 1858 that the court has no power to amend an indictment as to the matter of substance without the concurrence of the grand jury by whom it was found, although amendments as to mere informalities may be made by the court. McGuire v. State, 35 Miss. 366 (1858). See also Miller v. State, 53 Miss. 403 (1876); Peebles v. State, 55 Miss. 434 (1877); Blumenberg v. State, 55 Miss. 528 (1878). It is refreshing to be able to cite authorities from the last century, and, indeed, from the annotations under the constitutional section and to experience the rare and unusual assurance that, in some ways, the law changes slowly or not at all. Later cases cited by the appellant include Van Norman v. State, 365 So.2d 644 (Miss. 1978) and Kemp v. State, 121 Miss. 580, 83 So. 744 (1920). These cases clearly support the rule above quoted that the state can prosecute only on the indictment returned by the grand jury and that the court has no authority to modify or amend the indictment in any material respect.
The amendment permitted Rhymes to be charged with violation of Miss. Code Ann. § 97-3-95(2), not § 97-3-95(1) as indicted by the Grand Jury. His defense that Nettles was not under 14 years of age but 26 years old at the time would have required the jury to return a verdict of acquittal. Such an amendment is of substance and beyond the power of the circuit court and requires Grand Jury action to correct. It was reversible error for the circuit court to amend the indictment.

III.
For the foregoing reasons Rhymes' conviction of burglary of an occupied dwelling and sentence to fifteen years under the supervision of the Mississippi Department of Corrections and conviction of the crime of sexual battery and sentence to thirty years under the supervision of the Mississippi Department of Corrections are reversed and remanded.
REVERSED AND REMANDED.
HAWKINS, C.J., PRATHER, P.J., and JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
DAN M. LEE, P.J., concurs in results only.
SULLIVAN, J., concurs in part and dissents in part with separate written opinion, joined by McRAE, J.
PITTMAN, J., not participating.
SULLIVAN, Justice, concurring in part and dissenting in part:
I concur with Justice Banks that Rhymes' convictions and attendant sentences must be reversed and remanded to the trial court. However, because I would also find that Rhymes' constitutional right to a speedy trial has been abridged in this case, I respectfully dissent from Justice Banks' opinion to the contrary.
Justice Banks has correctly noted the factors we consider when analyzing a defendant's speedy trial claim as enunciated by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972): 1) length of the delay; 2) reason for the delay; 3) assertion of speedy trial right; and 4) prejudice. We have repeatedly held that no one factor is dispositive. In fact, we weigh all the factors together in light of the particular circumstances of each case. Jaco v. State, 574 So.2d 625, 630 (Miss. 1990).
I agree that the delay in this case presumptively violates Rhymes' right to a speedy trial, and therefore triggers our examination of the other three factors. I also agree that Rhymes wanted a speedy trial. The state's arguments to the contrary are not supported by the record. Furthermore Justice Banks is correct in that the state negligently caused the delay.
I note further that when the state's negligence causes the delay, that factor weighs less heavily against the state than when the state intentionally stalls in order to compromise *1277 the defense. Barker, 407 U.S. at 531, 92 S.Ct. at 2192. However, we must always keep in mind that negligence does indeed weigh against the state as "it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." Doggett v. U.S., 505 U.S. ___, ___, 112 S.Ct. 2686, 2693, 120 L.Ed.2d 520 (1992).
The third factor, assertion of the right, obviously weighs heavily in Rhymes' favor. He unequivocally demanded a speedy trial on July 12, 1990. He filed his demand approximately 42 days after his arrest, and just three days after the indictment was returned against him in this cause.
Justice Banks notes that Rhymes' early demand might be considered "routine" and "boiler plate" by some of the prosecutors of this state. (Banks, J., opinion at 1274). He also implies that Rhymes should have complained when his trial did not commence in the July term of court. Id.
What is more relevant is the fact that Rhymes was never under any obligation whatsoever to bring himself to trial  that burden rests with the prosecutors and the courts. Barker, 407 U.S. at 527, 92 S.Ct. at 2190-91. Rhymes, however, requested a speedy trial, and the record indicates nothing other than the fact that he wanted one. The prosecutor fell short by not placing the proper importance on Rhymes' demand. Also, Rhymes did not need to repeatedly complain about something he was never obligated to complain about. This factor weighs heavily in his favor.
With regard to Rhymes' demand for dismissal "being called up so late" in the proceedings (Banks, J., opinion at 1273-74), the trial judge was actually only concerned about a few days, proclaiming, "[w]ell, the motion should have been brought up last week." Rhymes raised his motion to dismiss for lack of a speedy trial on April 1, 1991. The judge merely thought the motion should have been heard on March 27, 1991, along with other preliminary motions. Furthermore, I submit that Rhymes' demand for dismissal is also an assertion of his right to a speedy trial as contemplated by the Barker Court.
When the first three factors weigh in favor of the defendant, it is wholly unnecessary to consider the prejudice factor. Prince v. Alabama, 507 F.2d 693, 707 (5th Cir.1975). See also, Ringstaff v. Howard, 861 F.2d 644 (11th Cir.1988). Thus, Rhymes has already successfully appealed his speedy trial claim.
However, if my colleagues find it helpful, I will address the last Barker factor as it too weighs in Rhymes' favor. We stated in Jenkins v. State, 607 So.2d 1137, 1140 (Miss. 1992):
Prejudice is assessed in light of the interest of the defendant which the right to a speedy trial is designed to protect: 1) prevention of oppressive pre-trial incarceration 2) minimization of anxiety and concern of the accused and 3) limitation of the possibility of impairment of defense.

Vickery [v. State], 535 So.2d [1371] at 1377 [Miss. 1988].
Of great importance is the fact that when it has been established that the delay is presumptively prejudicial, as it has been in this case, the burden of persuasion as to whether the defendant has suffered prejudice, and thus the risk of non-persuasion, falls on the prosecution. Doggett v. U.S., 505 U.S. ___, 112 S.Ct. 2686, 2694, 120 L.Ed.2d 520 (1992); U.S. v. Shell, 974 F.2d 1035 (9th Cir.1992); Prince v. Alabama, 507 F.2d 693, 707 (5th Cir.1975).
Justice Banks concludes that since the delay negligently caused by the state in this case is not as protracted as the delay caused by the government in Doggett, Rhymes cannot prevail short of proving particularized prejudice to his defense. In my view, Justice Banks places too much emphasis on this one aspect of the three pronged prejudice factor. Also, Justice Banks fails to properly focus on the fact that the burden falls squarely on the state to prove that Rhymes' case has not been prejudiced.
I agree that Rhymes did not effectively show that his defense was impaired by the delay. The state, however, has not persuasively rebutted what we must presume; namely, that when there has been excessive delay, the reliability of the trial has been *1278 compromised. Doggett, 505 U.S. at ___, 1112 S.Ct. at 2693. I recognize that the delay in this case is not as long as the delay in Doggett; however, that only means this factor weighs less heavily in Rhymes' favor. Justice Banks correctly states that the weight accorded to this factor increases with the length of the delay caused by the state's negligence. That, however, does not mean this factor weighs against Rhymes simply because the delay in his case is not as protracted as the delay in Doggett  that is, this factor must still be weighed in his favor.
Rhymes claims that he suffered prejudice because he was unable to participate in a rehabilitation program as a result of the charges in this case. Justice Banks summarily disposes of Rhymes' contention, stating that he raised this issue for the first time on appeal. Once again, we must remember that it is not Rhymes' burden to persuade us here. Doggett, 505 U.S. at ___, 112 S.Ct. at 2694. The fact that he has only raised this argument on appeal should not serve to supplant the state's clear obligation to convince us that Rhymes did not suffer prejudice. Moreover, Justice Banks, referring to the revocation of Rhymes' parole, states that "the record is not clear as to the role of the instant charge in that process." (Banks, J., opinion at 1275). As the risk of non-persuasion falls on the prosecution, I submit that an unclear record on this point favors Rhymes.
Furthermore, while I cannot argue that Rhymes has been subjected to oppressive pre-trial incarceration, the government has completely failed to persuasively rebut the presumption that he suffered anxiety and concern during the delay. The fact that Rhymes was incarcerated because of other crimes does not mean he was nonchalantly awaiting trial in this case. This is especially true in light of the fact that he could receive consecutive sentences. It is no more reasonable to conclude that he did not suffer this type of personal prejudice than it is to find that he did, and absent a showing by the state to the contrary, we are required to weigh this factor in his favor. See Beavers v. State, 498 So.2d 788, 792 (Miss. 1986) (speedy trial right abridged by 432 day delay accompanied by little evidence of prejudice in the record).
All four Barker factors weigh in Rhymes' favor. Therefore, contrary to Justice Banks, I would reverse because his right to a speedy trial was denied.
McRAE, J., joins this opinion.