# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-KA-01184-SCT

*MARK CHEVALIER, a/k/a MARK EDWIN CHEVALIER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/23/96 |
| TRIAL JUDGE: | HON. MICHAEL RAY EUBANKS |
| COURT FROM WHICH APPEALED: | JEFFERSON DAVIS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MORRIS SWEATT, SR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | RICHARD DOUGLASS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 12/31/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/3/99 |

**EN BANC.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Mark Chevalier was convicted by a Jefferson County jury of kidnapping. The jury was unable to agree on a penalty, so the judge sentenced Chevalier to thirty years in the Mississippi Department of Corrections, with the last ten years to be suspended. Aggrieved, Chevalier brings this appeal, assigning as error the amendment of his indictment, the inadequacy of the jury instruction on kidnapping, the exclusion of Thomas Earl Stevens's testimony, the sufficiency and weight of the evidence, and the legality of his sentence.

¶2. We find that the trial court committed reversible error by allowing the State to amend the indictment and by failing to adequately instruct the jury on the elements of kidnapping in this case. As a result, we decline to consider the sufficiency or weight of the evidence. However, because the issues of Stevens's testimony and the legality of sentencing could arise on retrial, we address Chevalier's contentions on those points and find no merit to his claims.

## STATEMENT OF THE FACTS

¶3. Mark and Karen Chevalier were married in 1995. Their son, Marcus, was five years old at the time of their marriage. After five months they separated, and Karen and Marcus began living with her parents. Mark moved in with his mother. The parties had been separated for approximately six months when the incident in question occurred.

¶4. On March 22, 1996, Karen was driving her mother, Linda Trott, to the doctor when they met Mark on the highway. He pulled them over and told Karen he wanted to talk to her. Karen told Mark they could talk at the doctor's office, whereupon Mark followed them into town. Once in the parking lot at the doctor's office, Karen and Mark stepped outside their vehicles, and Karen proceeded to remove some of her clothes from Mark's car. Mark then asked Karen if she would go for a ride with him so they could talk. Karen replied that she would prefer that they talk in the parking lot. At this point, Mark grabbed Karen by her "pony-tail", grabbed Marcus under his arm, and put them both in his car. The doctor's secretary, Diane Cox, heard a woman and a child screaming from the parking lot, looked out of the office window, and witnessed Mark forcing Karen and Marcus into the car. At this point, Anna Fortenberry, another witness at the doctor's office, called the sheriff.

¶5. Shortly after they left the doctor's office, a sheriff's deputy stopped the trio and asked Mark if he could ask him a few questions. Mark asked the police officer if he was under arrest. The officer replied that he was not, and Mark sped away. Karen testified that she did not ask the deputy for help, because before he pulled up, Mark had warned her not to say anything. After Mark sped away, Karen says she asked him to stop. When he refused, she asked him to turn onto a side road. Karen testified that she thought that if Mark continued on the main road that the deputy would chase them, Mark would try to outrun him, and they might have a wreck. Shortly after turning onto the side road, their vehicle became stuck in mud. Unable to free the car, they walked a few miles to the home of Earl Vinson, who took them to the home of Mark's mother, Jane Chevalier. Karen did not indicate to Vinson that Mark was holding her against her will. Vinson testified that Karen "didn't say much at all," but that she acted "a little bit funny." Karen testified that she did not tell Vinson that Mark was holding her against her will, because she was afraid that Mark would harm him if she did.

¶6. Once they arrived at Jane Chevalier's house, Mark and Karen went into a back bedroom to talk. The police arrived shortly thereafter. Mark and Karen briefly hid under the bed, but they did come out when Mrs. Chevalier came to get them. One of the officers asked Karen if she wanted to leave. When she replied that she wished to do so, Mark assaulted one of the police officers.

¶7. Mark was subsequently tried and convicted for kidnapping. He claims that Karen had access to the passenger side of the vehicle and could have exited the car at any time. Further, he asserts that she was free to leave his mother's home at any time. Karen says that when she reached for the door handle, Mark told her not to touch the door handle. She contends that she was afraid of Mark and "did not know what he would do." She testified that while he had never hit her, he had previously shoved her around and threatened both her and her family.

## I.

## WHETHER THE TRIAL COURT ERRED IN GRANTING THE STATE'S ORAL MOTION TO AMEND THE INDICTMENT.

¶8. The legislature has mandated that an indictment may be changed as to form, but not as to the substance of the offense charged. Miss. Code Ann. § 99-17-13 (1994). The original indictment here read in pertinent part as follows:

> . . . Mark Chevalier did willfully, unlawfully, feloniously, and without lawful authority for doing so and against the will of Karen B. Chevalier forcibly seize and kidnap the said Karen B. Chevalier, a human being, with the intent to cause the said Karen B. Chevalier to be secretly confined and held against her will, contrary to and in violation of Section 97-3-53 of the Mississippi Code of 1972 as amended.

The State amended this indictment after the trial began by omitting the word "secretly." Chevalier maintains that this amendment is substantive and is thus prohibited by § 99-17-13. The State asserts that the amendment is permissible, because it only amends the form of the indictment.

¶9. "It is fundamental that courts may amend indictments only to correct defects of form, however, defects of substance must be corrected by the grand jury." *Rhymes v. State*, 638 So.2d 1270, 1275 (Miss. 1994) . The State asserts that the amendment was not substantive, because including the word "secretly" in the indictment was "mere surplusage," since secretly confining is not a necessary element of kidnapping. Miss. Code Ann. § 97-3-53 (1994). We disagree.

> The test of whether an accused is prejudiced by the amendment of an indictment or information has been said to be whether or not a defense under the indictment or information as it originally stood would be equally available after the amendment is made and whether or not any evidence [the] accused might have would be equally applicable to the indictment or information in the one form as in the other; if the answer is in the affirmative, the amendment is one of form and not of substance.

*Medina v. State*, 688 So.2d 727, 730 (Miss. 1996) (*quoting* *Griffin v. State*, 540 So.2d 17, 21 (Miss.1989) (*quoting* *Reed v. State*, 506 So.2d 277, 279 (Miss.1987))). The purpose of this rule is to protect the rights of the defendant by preventing unfair surprise after he has diligently prepared his defense strategy. *See* URCCC 7.09. The issue here is not the sufficiency of the indictment, but whether amending the indictment compromised the defendant's rights by prejudicing his defense. "Due Process requires the State to prove each element of the offense charged in the indictment beyond a reasonable doubt." *Hennington v. State*, 702 So.2d 403, 408 (Miss. 1997). Once the prosecution made the decision to include the element of "secretly confined" in Chevalier's indictment, it was constrained to prove that element beyond a reasonable doubt. Removing the word "secretly" from the indictment deleted an element of the offense charged, and in the process omitted one of the defenses otherwise available to Chevalier. Review of the trial transcript reveals that part of Chevalier's trial strategy was to present evidence that his wife was not secretly confined. During cross-examination, his wife admitted that none of the places where Chevalier took her were "secret places." It was after this testimony that the prosecution made its motion to amend the indictment. Deleting the element of "secretly confined" from the indictment was a substantive change, and could only have been made by the grand jury.

¶10. The trial court committed reversible error by allowing the prosecution to circumvent the grand jury by amending the indictment in this case. We are therefore compelled to reverse Chevalier's conviction for kidnapping and thirty-year sentence and remand this case to the Jefferson Davis County Circuit Court for further proceedings.

## II.

## WHETHER THE TRIAL COURT ERRED IN EXCLUDING THE TESTIMONY OF THOMAS EARL STEVENS.

¶11. On May 7, 1996, Karen was residing with her mother, Linda Trott, and Mark was residing with his mother, Jane Chevalier. On this date, two months after the alleged offense, Jane Chevalier's caller identification device reflected that a call was made from Linda Trott's residence to Jane Chevalier's residence. Mark had a Prentiss police officer, Thomas Earl Stevens, observe the caller identification unit to verify that the call had been placed. Chevalier contends that the fact that Karen may have called him two months after the incident, and after the court had instructed her not to contact him, establishes that she sent him mixed signals. He argues that this evidence is relevant because it goes to the victim's state of mind. The trial court excluded Stevens' testimony opining that it did not meet the relevancy requirements of Rule 401 of the Mississippi Rules of Evidence. The trial judge cogently noted that Chevalier failed to demonstrate that it was Karen who placed the call. We agree with the judge. The fact that a phone call was made from Linda Trott's residence to the Chevalier residence has little relevance, particularly since the defense could not establish that Karen made the phone call. Thus, we affirm the trial court on this issue.

## III.

## WHETHER THE TRIAL COURT ERRED WHEN IT GRANTED THE STATE'S JURY INSTRUCTION S-2 WHICH DEFINED THE CRIME OF KIDNAPPING.

¶12. Chevalier objected to jury instruction S-2 on the grounds that it did not correctly define the crime of kidnapping. Instruction S-2 read:

> The defendant, Mark Chevalier, has been charged with the crime of kidnapping. If you find from the evidence in this case beyond a reasonable doubt that:
>
> The defendant, Mark Chevalier, did on or about March 22, 1996, wilfully, feloniously, intentionally and forcibly seize and confine Karen B. Chevalier, a human being, against the will of and without the consent of Karen B. Chevalier, by forcing her into a vehicle and driving away from the scene,
>
> Then you shall find the defendant guilty of kidnapping.

Chevalier claims that this is a misstatement of the law. He asserts that the crime of kidnapping consists not only of the elements of intent to forcibly seize and confine a person, but also requires the intent to secretly confine that person. According to Chevalier, a forcible seizure and confinement which lacks the latter element is an assault, not a kidnapping.

¶13. The statute defining kidnapping, Section 97-3-53, reads:

> Any person who shall without lawful authority forcibly seize and confine any other person, or shall inveigle or kidnap any other person with *intent to cause such person to be secretly confined or imprisoned* against his or her will. . . .shall, upon conviction, be imprisoned for life in the state penitentiary if the punishment is so fixed by the jury in its verdict. . .

Miss. Code Ann. § 97-3-53 (1994) (emphasis added). It is a long-settled rule of this Court that criminal

statutes are to be strictly construed in favor of the accused. ***Reining v. State***, 606 So. 2d 1098, 1103 (Miss. 1992); ***State v. Burnham***, 546 So. 2d 690, 692 (Miss. 1989). Construction of criminal statutes means a reasonable construction, which requires some consideration of the statutory purpose. *See **Id***. Nonetheless, we should not read out any language which is obviously contained in the statute.

¶14. In ***Aikerson v. State***, 274 So.2d 124 (Miss. 1973), this Court reversed the kidnapping conviction because the indictment, like the jury instruction here, failed to adequately set out the very same elements necessary for kidnapping, that were not set out in this case. The ***Aikerson*** Court observed that the failings in question would rewrite the statute to read, "Any person who shall without lawful authority forcibly seize and confine any other person . . . against his or her will . . . shall on conviction suffer death or be imprisoned for life in the state penitentiary if the punishment is so fixed by the jury in its verdict, . . ." ***Aikerson***, 274 So.2d at 127. We went on to say that such a reading of the statute would mean that any "person who seized and held another in a fist fight" would be guilty of kidnapping. ***Id.*** The point is that our kidnapping statute requires more than intentional seizing or confining, it requires such acts with a specific intent.

¶15. Because § 97-3-53 requires strict construction and the instruction in this case fails to direct the jury that it must find Chevalier seized and confined Karen Chevalier "with the intent to secretly confine or imprison" before he could be found guilty of kidnapping, we must reverse and remand this case for further proceedings.

## IV.

## WHETHER THE SENTENCE IMPOSED BY THE COURT CONSTITUTED CRUEL AND UNUSUAL PUNISHMENT.

¶16. Chevalier contends that the sentence of thirty years imprisonment imposed by the trial court constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. He cites ***Solem v. Helm***, 463 U.S. 206, 227 (1983) to support his proposition that a sentence must be proportionate to the crime for which the defendant has been convicted. Chevalier maintains that a thirty-year sentence is not proportionate to the crime of putting one's estranged spouse in a vehicle and asporting her throughout the countryside against her will.

¶17. It is well settled that the trial court has complete discretion to sentence a defendant as long as the trial court is within the statutory guidelines. ***Berdin v. State***, 648 So.2d 73, 80 (Miss. 1994). Indeed, error in sentencing cannot be found if the sentence imposed by the trial court is within the statutory limits. ***Johnson v. State***, 461 So.2d 1288, 1292 (Miss. 1984); ***Sanders v. State***, 678 So.2d 663, 669 (Miss. 1996). Here, Chevalier was sentenced under § 97-3-53, which mandates that if the trial judge determines the penalty, then the penalty should range from one year to thirty years in the state penitentiary. Miss. Code Ann. § 97-3-53 (1994). The judge sentenced Chevalier to thirty years with ten of those years suspended. This penalty, while lengthy, was authorized by the statute, and thus, the trial judge did not abuse his authority.

## <u>CONCLUSION</u>

¶18. The trial judge committed reversible error by allowing the State to amend Chevalier's indictment to remove an element of the crime of kidnapping in this case. Omission of the element of intent to secretly confine in the jury instructions also requires reversal here. We therefore reverse Chevalier's conviction of

kidnapping and thirty-year sentence and remand this case to the Jefferson Davis County Circuit Court for further proceedings.

¶19. **REVERSED AND REMANDED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE AND WALLER, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS, J. MILLS, J., NOT PARTICIPATING.**

**SMITH, JUSTICE, DISSENTING:**

¶20. I must respectfully dissent from the majority opinion. It is well settled in this state that if an indictment is altered to change the nature of the charge, then it must be done by the grand jury, not the trial judge. *Rhymes v. State*, 638 So.2d 1270, 1275 (Miss. 1994) *(citing Griffin v. State*, 584 So.2d 1274, 1275-76 (Miss. 1991) *(citing Akins v. State*, 493 So.2d 1321, 1322 (Miss. 1986)). However, changing an indictment at trial is permissible if the change does not materially alter the facts which are the essence of the offense or if the change does not materially alter a defense to the indictment. *Rhymes*, 583 So.2d at 1275. The test for determining if an alteration prejudiced the defendant's case is found in *Griffin v. State,* 584 So.2d 1274, 1276 (Miss. 1991), which states that prejudice occurs if a defense as it stood under the original indictment is no longer available subsequent to the amendment. *Holmes v. State*, 660 So.2d 1225, 1226 (Miss. 1995). We evaluate altered indictments on a case by case basis to determine if the charge has been materially altered or if the defense has been prejudiced. Cases interpreting amended indictments include *Shelby v. State*, 246 So.2d 543, 545 (Miss. 1971) which holds that it is not reversible error to change the date of the offense by one day and *Lester v. State*, 692 So.2d 755, 775 (Miss. 1997) which holds that it is reversible error to add additional instances of battery to the indictment.

¶21. In the case *sub judice*, Chevalier argues that his case was prejudiced by the deletion of the word "secretly" from the altered indictment. He claims that one of his defenses was that he never "secretly" confined Karen Chevalier.

¶22. Our statute provides for two means of kidnapping: secret confinement against a person's will and imprisonment against a person's will whether or not a third party is aware of the confinement. Therefore, the use of the word "secretly" in the indictment was mere surplusage and the deletion of the word was not a substantive change in the indictment. The defendant was well aware that he was charged with kidnapping, for having "without lawful authority forcibly seized and confined any other person." Thus, the trial court did not err in allowing the State to amend the indictment to delete the word "secretly." I would not reverse on this issue.

**ROBERTS, J., JOINS THIS OPINION.**