# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-KA-00777-SCT

*RICHARD MARK JONES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/03/1999 |
| TRIAL JUDGE: | HON. L. BRELAND HILBURN, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | THOMAS M. FORTNER |
| | ROBERT M. RYAN |
| | ANDRE DE GRUY |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 10/25/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/15/2001 |

**EN BANC.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1. Richard Mark Jones (Jones) was tried and convicted in the Circuit Court of Hinds County, Second Judicial District, of simple assault on a law enforcement officer and possession of a firearm by a convicted felon. Subsequently, Jones was sentenced to a term of five years for the assault conviction and a three-year term for firearm possession to be served in the custody of the Mississippi Department of Corrections (MDOC), the terms to run consecutively. Jones perfected a timely appeal to this Court and raises a litany of assignments of error.

## FACTS

¶2. On March 16, 1998, Hinds County Sheriff's Deputy Donnie Newman (Newman) stopped at the Pit Stop Grocery in Raymond, Mississippi, on Highway 18 to fuel his police cruiser. After filling the tank, Deputy Newman paid for his purchase and spoke briefly with the attendant on duty. Although there is some conflict over the sequence and particulars of the following events, it is undisputed that Newman heard someone calling for his attention as he walked back to the patrol car. From the record, it appears that while sitting in the driver's seat of his 1987 Dodge Ram along with his wife and two sons, Jones twice called out to the deputy asking him to approach the truck. Deputy Newman walked over to the truck to see what Jones wanted. Jones has a history of conflict with the Hinds County Sheriff's Department over what he believes to be its involvement in the death of his oldest son in 1996.

¶3. In a quiet voice, Jones asked, "Why did you kill my son?", referring to the automobile wreck that claimed his son's life two years earlier. In response, Newman instructed Jones to take his family and leave the premises. Again, Jones asked about the death of his son. Deputy Newman explained that he was not even on duty at the time and again instructed Jones to leave. According to Newman, Jones responded by cursing and calling the deputy a "child killing motherfucker", whereupon Deputy Newman said, "Richard, I am going to give you one more chance. You need to drive out of here with your family. No use in starting a scene here." At this point, Jones allegedly stuck his head out of the window and began yelling profanity and accusing Newman of having a hand in his son's death.

¶4. At this time, Deputy Newman instructed Jones to get out of his truck. When Jones asked why, Newman responded, "You are under arrest." At which, Jones's wife screamed, "Don't get out. He is going to kill you." Newman again instructed Jones to step out of the vehicle. When Jones did not, Newman repeatedly attempted to pull open the driver's side door while instructing Jones to "Get out of the truck."

¶5. According to Deputy Newman, Jones finally threw the door open with all of his strength, knocking the deputy back three or four feet. Once he regained his composure, Newman claims he was confronted by Jones standing next to his truck with fists raised yelling, "Let's get it on." As Newman approached, Jones dropped his fists and said, "Motherfucker, hit me. That's all I want you to do. Just lay a hand on me." A brief scuffle ensued as Newman wrestled to put handcuffs on Jones. Finally, Deputy Newman was able to cuff Jones and place him in the back of the patrol car. Newman also claims that Mrs. Jones joined in the altercation while the deputy was attempting to handcuff her husband.

¶6. The convenience store clerk, Janice Curtis, initially claimed to have only seen the finale of the incident, the placing of Jones in the patrol car. However, at trial, she claimed to have seen the portion involving the door as well as the final result.

¶7. Mrs. Jones and Richard Lee Jones, the appellant's son, testified differently. They claimed that Newman was the party getting upset and that Jones merely asked questions until the deputy tried to place him under arrest.

¶8. Although he offered inconsistent statements, Newman testified at trial that he had seen the butts of some guns behind the passenger seat of Jones's truck. Once Jones was safely stowed in the patrol car, Newman returned to the truck. Mrs. Jones and Richard Lee Jones (and Deputy Newman's statements at the preliminary hearing) assert that Newman asked whether there were any guns in the vehicle before asking that the weapons be turned over. After a short bout of verbal fencing with both Mrs. Jones and the eldest son, Deputy Newman confiscated three weapons (a 12-gauge shotgun, an AR-15 Colt automatic rifle, and a nine-millimeter Smith & Wesson handgun). He checked to see if the guns were stolen; they were not. When Newman's lieutenant arrived, the deputy was instructed to give the guns back to Mrs. Jones who took them home.

¶9. In the end, Jones was tried, convicted, and sentenced to five years for simple assault on a law enforcement officer for hitting Deputy Newman with the truck door. In addition, he received a three-year sentence for possession of a firearm by a convicted felon to run consecutively to the simple assault sentence. From these convictions and sentences, Jones appeals.

## **DISCUSSION**

## I. WHETHER THE TRIAL COURT ERRED IN DENYING JONES'S MOTIONS TO SUPPRESS.

¶10. Jones's first contention is that the trial court erred in denying his two motions to suppress. The first of the two motions challenged the initial arrest as unlawful and sought to have all evidence obtained thereafter excluded as "fruit of a poisonous tree." The second motion asserted that the search of Jones's vehicle and subsequent seizure of evidence (i.e. the guns) was a violation of Jones's constitutional rights. These two motions will be dealt with separately.

### A) The lawfulness of the initial arrest

¶11. The first motion to suppress claimed that the initial arrest was unlawful, and as such, all evidence collected afterward should be excluded. As evidence of the arrest's unlawfulness, Jones points to the fact that all misdemeanor charges stemming from the initial arrest were later dismissed by the Justice Court of Hinds County. The dismissals were not allowed to be entered into evidence at trial, and Jones claims this also constitutes reversible error.

¶12. Jones cites *Pollard v. State*, 233 So. 2d 792 (Miss. 1970), as authority for his position that the initial arrest was unlawful. Pollard was convicted of assault with a deadly weapon stemming from a chase and shootout with an off-duty police officer. *Id.* at 793. However, the conviction was later overturned when it was determined that the officer did not have sufficient probable cause to approach the subject's vehicle when initiating the arrest. *Id.* We concluded that any evidence of resisting the unlawful arrest should be excluded. *Id.* However, *Pollard* is not analogous to the present case because in *Pollard* the officer initiated the contact and in the case at bar Jones initiated the contact and asked Newman to approach the truck. More germane to the case at bar is *Terry v. State*, 252 Miss. 479, 173 So. 2d 889 (1965). In that case, officers initiated an arrest with no evidence evidence of a crime. "The sheriff had no right to arrest defendant unless it was evident to him at the time that some breach of the peace was being threatened or a crime was being committed in his presence." *Terry*, 173 So. 2d at 891. The threshold question is whether Newman had probable cause to initiate an arrest. No one from the convenience store asked that Jones be removed. A determination of when the arrest began controls the outcome on this issue. From the evidence, it appears as though Deputy Newman tried to initiate an arrest before a crime had been committed by asking Jones to get out of his vehicle merely because Jones would not leave the convenience store.

¶13. The only acts Jones engaged in before the arrest, according to the record, which could possibly have warranted an arrest consisted of his profane remarks. There is no evidence in the record that would suggest that Jones could have initially been arrested for anything other than the verbally accusatory and profane remarks. The evidence suggests that Newman did not see the guns or inquire about the guns until after Newman told Jones he was under arrest. This situation forces this Court to consider the type of "profanity" which would warrant an arrest. Miss. Code Ann. §  97-29-47 (2000) proscribes the use of profanity in a public place. We have not had an opportunity to interpret the statute; however, the Mississippi Court of Appeals has recently had an occasion to define what it believes the use of "profanity" sufficient to warrant an arrest entails.

¶14. In *Brendle v. City of Houston*, 759 So.2d 1274 (Miss. Ct.App. 2000), Brendle was convicted of public profanity under Miss. Code. Ann. §  97-29-47 and resisting arrest. The Court of Appeals noted that it has been over 70 years since this Court has addressed the issue of what constitutes "profanity" and that we have not had an opportunity to interpret Mississippi's profanity statute. The Court of Appeals relied on

other jurisdictions and the United State Supreme Court opinion of ***Cohen v. California*** 403 U.S. 15, 91 S. Ct. 1780, 29 L. Ed. 2d 284 (1971), in overturning Brendle's conviction. The Court of Appeals found that Brendle did not use fighting words that would incite violence and therefore his subsequent arrest was not lawful. 759 So.2d at 1284. However, this Court is now reluctant to adopt the reasoning of the Court of Appeals under these facts, and finds the reasoning in ***Terry v. State*** to be dispositive of this issue. Based upon a careful review of the record, this Court finds that Deputy Newman, did not have sufficient evidence to believe that a breach of the peace was being threatened or a crime was about to be committed. Accordingly, all evidence of acts of resisting the unlawful arrest should be excluded.

### B) The legality of the search and seizure

¶15. The second motion to suppress deals with the legality of the search and seizure of the weapons in the truck. The State contends that the search was both incident to an arrest and falls within the "plain view" exception. However, Jones argues that neither of these warrantless search exceptions apply.

¶16. First, Jones points out that he was handcuffed and safely locked in the backseat of the patrol car when Deputy Newman seized the weapons. "In the case of a search incident to arrest, the exception to the warrant requirement is founded upon the reasonable concern that the arrestee might have a weapon on his person or within reach, and that he may attempt to destroy evidence which is within grasp." ***Ferrell v. State***, 649 So. 2d 831, 833 (Miss. 1995) (citing ***Cupp v. Murphy***, 412 U.S. 291, 295, 93 S. Ct. 2000, 2003, 36 L.Ed. 2d 900 (1973)). Jones neither posed a danger nor had the ability to destroy evidence. Therefore, the seizure does not come within the bounds allowable under a search pursuant to an arrest.

¶17. At trial, Newman did testify that he saw the guns while standing next to the vehicle which would allow their seizure under the plain view exception. ***United States v. Jimenez***, 864 F.2d 686 (10th Cir. 1988). However, the discrepancies between his description of where the guns were and that of the Jones family are troublesome, as is the fact that details of Deputy Newman's story changed from the preliminary hearing to the trial. At first, he described himself asking Richard Lee Jones whether there were guns present in the car, without ever mentioning having seen them. At trial, he remembers seeing them before he made his arrest. As we must view the evidence "in the light most consistent with the verdict," it appears as if the warrantless seizure comes within the plain view exception. ***Manning v. State***, 735 So. 2d 323, 333 (Miss. 1999).

## II. WHETHER THE TRIAL COURT ERRED IN DENYING THE MOTION TO SEVER THE COUNTS OF THE INDICTMENT.

¶18. Jones contends that the trial court erred in refusing to sever the counts of the indictment. Jones goes on to argue that by not severing the counts he was somehow prejudiced, without elaborating on the subject. Miss. Code Ann. § 99-7-2 (2000) provides in pertinent part:

> (1) Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan.

> (2) Where two (2) or more offenses are properly charged in separate counts of a single indictment, **all such charges may be tried in a single proceeding**.

(emphasis added).

¶19. These charges were properly brought as separate counts of a single indictment; there is nothing requiring them to be severed. Furthermore, severance of counts is within the sound discretion of the trial judge. *Minor v. State*, 482 So. 2d 1107, 1109 (Miss. 1986). Vague accusations of unfair prejudice do not amount to abuse of discretion. Therefore, we find no error.

### III. WHETHER THE TRIAL COURT ERRED IN FAILING TO TRANSFER THE MATTER TO THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY.

¶20. Jones argues that his motion to transfer venue should have been granted because his previous mental troubles were common knowledge in the Second Judicial District. In response to his motion, the trial court stated,

> [C]ertainly if in the voir dire of the jurors it turns out that there are a significant number of jurors that are familiar with the facts of the case I would sustain your motion. But at this time if we are able to have enough jurors to try the case without them having knowledge of the charges, then the Court will try it here. So I would consider your motion after we hear the voir dire of the jurors.

¶21. During voir dire, the concerns were addressed. As such, the trial judge, fully acting within his sound discretion, determined that a change of venue was unnecessary. *Baldwin v. State*, 732 So. 2d 236, 241 (Miss. 1999). Jones has done nothing to show that the judge abused his discretion. This assignment of error is without merit.

### IV. WHETHER THE TRIAL COURT ERRED IN FAILING TO SWEAR IN THE JURY PROPERLY.

¶22. Jones next contends that the trial court failed to properly swear in the jury members, and therefore, the verdict is null and void. This assignment of error is almost identical to that found in *McFarland v. State*, 707 So. 2d 166 (Miss. 1997). "[T]he presumption is that the trial judge properly performed his duties . . .." *Bell v. State*, 360 So. 2d 1206, 1215 (Miss. 1978). As in *McFarland*, the verdict and sentencing orders contained language that the jury had been duly sworn and performed their duties accordingly. In his argument, Jones has failed to overcome the presumption of propriety. As such, we find this assignment without merit.

### V. WHETHER THE TRIAL COURT ERRED EXCLUDING THE JUSTICE COURT'S DISMISSAL OF THE INITIAL MISDEMEANOR CHARGES.

¶23. Jones next argues that the trial court erred in excluding evidence that the Justice Court dismissed the initial misdemeanor charges. Jones asserts that the dismissals were relevant as evidence of the illegality of his arrest. Since individuals have a right to resist illegal arrest, the dismissal of the initial charges would have bolstered his theory of the case. *Boyd v. State*, 406 So. 2d 824 (Miss. 1981). In ruling as it did, the trial court, Jones contends, denied him the fundamental right to put the issue before the jury. However, as the State points out, the exclusion of the dismissals did not preclude Jones from developing his theory of illegal arrest using other evidence. An excerpt from the trial transcript illustrates the point:

> Jones: Your Honor, on the first motion, on the admission of the justice court records have you ruled on that?

Court: Yes, sir. I ruled that the ruling of the Court would be that the motion in limine on the rulings of the justice court would be sustained. Certainly, you are entitled to develop your proof along the lines of the factual circumstances surrounding the arrest, but the ruling of the justice court judge would be precluded.

Jones: I will not be allowed to introduce evidence that the cases were dismissed. Is that the ruling?

Court: Correct. They are not going to be allowed to introduce evidence that he was charged.

Jones: If they introduce evidence that he was charged, would I be allowed to introduce evidence that these charges were dismissed?

Court: Yes, sir.

¶24. Therefore, Jones could still advance his theory that the initial arrest was illegal through other means. M.R.E. 103(a) states that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . ." Since Jones still had the opportunity to present his defense, he was not deprived of any substantial right. Although we see no reason for the evidence to have been excluded, Jones failed to show how this ruling affected his right to a fair trial. Therefore, we find this assignment of error to be without merit.

## VI. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE STATE TO AMEND THE INDICTMENT.

¶25. The rule concerning indictments is that they cannot be amended to change the nature of the charge, except by the grand jury. *Miller v. State*, 740 So. 2d 858, 862 (Miss. 1999) (citing *Greenlee v. State*, 725 So. 2d 816, 819 (Miss. 1998)). Any amendment not approved by the grand jury must be of form only and must not affect the substance of the charge pending. *Rhymes v. State*, 638 So. 2d 1270, 1275 (Miss. 1994). "[A] change in the indictment is permissible if it does not materially alter facts which are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant's case." *Id.* at 1275 (quoting *Shelby v. State*, 246 So. 2d 543, 545 (Miss. 1971)). The amendment in controversy concerned language in Count 1, the assault charge, and occurred after jury selection and opening statements. The timing of the amendment only is enough to arouse suspicions, but the truly important consideration is whether the substance of the charge was in any way altered. The original amendment stated, in pertinent part:

. . . did unlawfully and feloniously, purposely or knowingly attempt by physical menace to put Donnie Newman, a human being, in fear of imminent serious bodily harm, by then and there pushing open a car door and striking said Donnie Newman with said car door and knocking him backwards . . ..

¶26. The State moved, and the trial court agreed, to delete "by physical menace to put" and replace it with "to cause bodily injury to." In addition, "in fear of imminent serious bodily harm" was striken. Thus, the amended indictment read, ". . . did unlawfully and feloniously, purposely and knowingly attempt to cause bodily injury to Donnie Newman, a human being, by then and there . . .." Jones contends this new language materially altered the charges he was facing by reducing the elements the State had to prove. Originally, the indictment required the State to show that Jones (1) acted with purpose or knowledge, (2) used physical menace, and (3) meant to put Newman in fear (4) of "imminent serious bodily harm." Under the amended indictment, the State merely had to show that Jones (1) acted with purpose or knowledge and (2) meant to

cause some degree of bodily injury.

¶27. The State contends that the amendment was one merely of form. Jones was originally charged with simple assault on a police officer, and that was the charge he faced after the amendment. Also, the facts establishing the charge were the same. In fact, the State argued that "[t]here's been no change in the offense. There's been no change in when it took place, who the victim is, or who the defendant is." As such, it believes that the trial court acted properly in allowing the amendment.

¶28. Although Jones failed to lay out exactly how his defense was impaired by the amendment, it is obvious that the altered indictment differs considerably from the original. True, the charge remained the same, and the amended indictment complied with the statutory elements. However, a criminal defendant is required only to illicit a "reasonable doubt" as to any element of an offense in order to disprove the State's case. *Chevalier v. State*, 730 So. 2d 1111, 1113-14 (Miss. 1998). In the present situation, the State's responsibility went from proving an intent to evoke fear of "imminent, serious bodily harm" to proving an intent to cause "bodily injury." The trial court erred in allowing the State to amend the indictment in the manner it did.

### VII. WHETHER THE TRIAL COURT SHOULD HAVE DECLARED A MISTRIAL FOR ALLEGED PROSECUTORIAL MISCONDUCT.

¶29. Jones indicates three instances that he claims evidence prosecutorial misconduct, which individually, as well as cumulatively warrant a new trial. Specifically, Jones asserts that the prosecution interjected improper evidence concerning other crimes by asking about Jones's previous possession of firearms.

State: Did you ever see your father go in the gun cabinet?

\*\*\*

State: You clarify me if I am wrong. Are you saying that your father didn't have any kind of guilty knowledge of being in possession of these guns? Is that what you are telling the jury?

\*\*\*

State: Have you ever seen your father handle any of those guns?

¶30. He avers that this deprived him of a fair trial. *See, e.g., Smith v. State*, 656 So. 2d 95 (Miss. 1995); *Usry v. State*, 498 So. 2d 373 (Miss. 1980).

¶31. In addition, Jones asserts that the prosecution made a personal attack on defense counsel during closing arguments, which also calls for a new trial. *See Edwards v. State*, 737 So. 2d 275, (Miss. 1999).

State: And so when a deputy does what his responsibility is - and it is an awesome responsibility - when he does take action what does he do? He gets reamed in a court of law by the lawyers representing the guy who is standing out there doing the screaming and hollering. Is that justice?

¶32. Finally, Jones accuses the prosecution of improperly discussing the fact that Jones was held without bail prior to the trial, a reversible breach. *Kelly v. State*, 735 So. 2d 1071 (Miss. Ct. App.1999).

¶33. Trial judges are given wide latitude in determining whether a remark is prejudicial to the defense and

whether a remark may be so prejudicial as to warrant a mistrial. ***Roundtree v. State,*** 568 So. 2d 1173, 1177 (Miss. 1990); ***Gribble v. State***, 760 So. 2d 790, 793 (Miss. Ct. App. 2000). In addition, the State attacks each alleged incident of misconduct as actually being anything but. First, the questions concerning Jones's prior possession of firearms were dealt with and addressed extensively at trial. In fact, the trial judge twice sustained Jones's objection as to that line of questioning and required the State to restrict its scope. As to the allegation of personal attacks against defense counsel, we are concerned with the State's actions. Although the State purports to have only been trying to discredit the impeachment of Newman, we are troubled by the method in which it chose to do so. However, attorneys are given considerable room to maneuver in their closing arguments, and the statement was not so egregious as to warrant declaring a mistrial. ***Wilcher v. State***, 697 So. 2d 1087, 1110 (Miss. 1997). Finally, the State refutes Jones's allegation that the issue of no bail was ever presented to the jury and points out that Jones neglected to indicate where in the trial process the alleged infraction occurred. A review of the record revealed only one instance in which the denial of bail could be inferred, and it was minor at best:

> State: Money from pawning would have come in handy in raising some kind of bond; wouldn't it?

¶34. After reviewing the record, these alleged incidents of prosecutorial misconduct do not appear to rise to the level that would warrant a mistrial. Furthermore, there is nothing to indicate that the trial judge abused his discretion in ruling as he did. Therefore, this assignment of error has no merit.

### VIII. WHETHER THE TRIAL COURT ERRED IN DENYING JONES'S PEREMPTORY INSTRUCTIONS AND IN FAILING TO GRANT A DIRECTED VERDICT IN FAVOR OF JONES.

¶35. Through this assignment of error, Jones is essentially challenging the sufficiency and weight of the evidence that form the basis for his conviction. When the sufficiency and weight of the evidence are questioned, the challenge is really being leveled against the accuracy of the jury's verdict. ***May v. State***, 460 So. 2d 778, 780-82 (Miss. 1994). Both the peremptory jury instructions and the motion for directed verdict are predicated upon the idea that the evidence simply did not justify a finding of guilt beyond a reasonable doubt. It is a fundamental principle of law that jury verdicts will not be disturbed except under the most dire of circumstances. ***Manning v. State***, 735 So. 2d 323, 333 (Miss. 1999). Accordingly, in our review of criminal convictions, we see the evidence in a light most favorable to the prosecution. ***Id***. If then we decide that no reasonable person could have found the accused guilty beyond a reasonable doubt, the verdict will be set aside. ***Id***. However, if our review reveals that "reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb." ***Id.*** A review of the record following this high standard does not reveal a verdict so wanting for evidence as to warrant a reversal. As such, this assignment of error is without merit.

### IX. WHETHER THE TRIAL COURT ERRED IN DENYING JURY INSTRUCTIONS D-6 AND D-7.

¶36. Jones appeals the trial court's denial of two of his proposed jury instructions. Specifically, Jones argues that D-6 and D-7 should have been given as they were the only proposed instructions "which set forth the defense theory of the case." Instruction D-6 may be properly classified as a lesser-included-offense instruction, and D-7 sets out the defense of resisting unlawful arrest. Jones asserts that both proposed instructions are correct statements of law and adequately supported by the evidence; thus, there exists no

justifiable reason for their denial. Therefore, Jones argues that the denial of these two instructions effectively prevented Jones from presenting his theory of the case to the jury, a reversible error. *See Alexander v. State*, 610 So. 2d 320 (Miss. 1993).

¶37. Instruction D-6 sets forth the elements of resisting arrest, which we recognize as a lesser-included offense of simple assault on a law enforcement officer. *Murrell v. State,* 655 So. 2d 881, 886 (Miss. 1995); *Clayborne v. State*, 739 So. 2d 495, 496 (Miss. Ct. App. 1999). D-6 States:

> If you believe from the evidence, beyond a reasonable doubt, that Richard Mark Jones did:
>
> 1) On or about March 16, 1998, in Hinds County Mississippi;
>
> 2) Unlawfully resist by force or violence;
>
> 3) His lawful arrest by a law enforcement officer;
>
> Then you may find Richard Mark Jones guilty of resisting arrest. If the prosecution has failed to prove any one or more of the above elements, beyond a reasonable doubt then you shall find the defendant not guilty.

¶38. We have long held, that "[o]nly where the evidence could *only* justify a conviction of the principal charge should a lesser offense instruction be refuted." (emphasis added). *Taylor v. State*, 577 So. 2d 381, 383 (1991) (citing *Ruffin v. State*, 444 So. 2d 839, 840 (Miss. 1984); *Fairchild v. State*, 459 So. 2d 793, 800 (Miss. 1984); *Lee v. State*, 469 So. 2d 1225, 1231 (Miss. 1985)). Using even stronger language, we have previously held that "[a] lesser-included offense instruction must be granted where a reasonable juror could not on the evidence exclude the lesser-included offense beyond a reasonable doubt."*Taylor*, 577 So. 2d at 383-84 (citing *Griffin v. State*, 540 So. 2d 17, 21 (Miss. 1989) (quoting *Harbin v. State*, 478 So. 2d 796 (Miss. 1985))). Furthermore, "[w]here the defendant requests a lesser-included offense instruction, one factor to be considered is the disparity in maximum punishments between the offenses. A great disparity is a factor in favor of giving the lesser included offense instruction." *Taylor*, 577 So. 2d at 383. In the present case, the disparity is quite great. Simple assault on a law enforcement officer carries a possible five year sentence (the sentence Jones received), and a resisting arrest conviction is subject to a maximum of six months. Since there is ample evidence in the record to justify the lesser-included offense instruction, there was no legal justification for its refusal.

¶39. The argument in support of D-7, the resisting illegal arrest instruction, lacks the same strength and precedential backing as that aiding D-6. D-7 states:

> The Court instructs the jury that a person has a fundamental right to use reasonable force to resist an unlawful arrest. The Court further instructs the jury that it is unlawful for a law enforcement officer to arrest a person for a misdemeanor offense not committed in his presence except where a warrant has issued.
>
> If you should find, that Richard Mark Jones did injure Donnie Newman, but that this was done in resisting an unlawful arrest and that the force he used was necessary under the circumstances, then you must find the defendant not guilty.

¶40. In fact, Jones simply states that the instruction was the only one containing the defense's theory of the

case, and as such, denying the instruction hindered the defense's ability to present its case. Although Jones's argument could have used some elaboration, we have held:

> [I]n deciding whether there is sufficient evidence that an issue be submitted to the jury, we must consider all of the evidence in the light most favorable to the party requesting the instruction . . . That party must also be given the benefit of all favorable inferences that may reasonably be drawn from the evidence.

*Jackson v. State,* 551 So. 2d 132, 146 (Miss. 1989). The granting of instructions should err on the side of inclusion rather than exclusion. *Taylor*, 577 So. 2d at 383-84. In fact, proposed instructions should generally be granted if they are correct statements of law, are supported by the evidence, and are not repetitious. *Id.* If the trial judge feels this instruction to fall within these perimeters, it too should be included.

¶41. The State attempts to rebut Jones's argument by urging this Court to rule that this issue has been waived for failure to object at trial. Contrary to the State's wishes, we decline to do so. There is a long line of cases which affirm the tenet that denial of instructions need not be objected to in order to preserve the issue for appeal. *Edwards v. State*, 737 So.2d 275, 310 (Miss. 1999); *Duplantis v. State*, 708 So.2d 1327 (Miss.1998); *Carmichael v. Agur Realty Co.,* 574 So.2d 603, 613 (Miss.1990). By submitting an instruction, one party is essentially declaring its belief that the instruction is a correct statement of law, which in turn puts the opposing side on notice. As such, we find that the trial court erred in denying the defense's proposed instructions.

### X. WHETHER THE CUMULATIVE EFFECT OF THE ALLEGED ERRORS DENIED JONES A FAIR TRIAL AND WARRANT REVERSAL.

¶42. Since we have dealt with each issue individually and are reversing on other grounds, we see no reason to rule upon this issue at this time.

### XI. WHETHER THE STATE FAILED TO PROVE THAT JONES'S TWO PRIOR FELONY OFFENSES AROSE OUT OF SEPARATE INCIDENTS FOR THE PURPOSE OF HABITUAL OFFENDER STATUS.

¶43. In order for a convicted defendant to be sentenced as a habitual offender, Miss. Code Ann. § 99-19-81 (2000) requires, in pertinent part, that the person "have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times . . .." In the past, we have held that even charges stemming from incidents occurring on the same day at the same place may count as "separate incidents" depending upon the circumstances. *Jackson v. State*, 518 So. 2d 1219 (Miss. 1988). The State's brief argument that "because of the very nature of the charges and the elements of those offenses, they cannot have been in the same incident" is not convincing. Such an argument is entirely too dismissive of the requirement established by the statute. Since we are reversing on other grounds, we need not rule directly on this matter.

### XII. WHETHER THE TRIAL COURT ERRED IN SETTING JONES'S SENTENCES TO RUN CONSECUTIVELY.

¶44. Jones contends that the trial court erred in fixing the sentences to run consecutively rather than allowing them to run concurrent to one another. Jones correctly points out that URCCC 7.07 gives trial judges discretion in imposition of sentences. Specifically, URCCC 7.07(E) provides

[n]othing contained in the rule shall be construed to prohibit the court from exercising its authority to suspend either the imposition or execution of any sentence or sentences imposed, nor prohibit the court from exercising its discretion to impose such sentences to run either concurrently with or consecutive to each other or to any other sentence or sentences previously imposed upon the defendant.

¶45. True, there is nothing within the rules or the statutes which required the trial judge to impose consecutive sentences. However, there is also no indication that in doing so he abused his discretion. This assignment of error is without merit.

## XIII. WHETHER THE TRIAL COURT ERRED IN DENYING JONES PRETRIAL BAIL.

¶46. "Bail is a fundamental, constitutionally protected right." *Resolute Ins. Co. v. State*, 233 So.2d 788, 789 (Miss.1970). However, the decision on whether to grant bail and in what amount lies within the sound discretion of the trial judge, and his decision will not be disturbed unless manifestly erroneous. *Lee v. Lawson*, 375 So.2d 1019, 1024 (Miss.1979); *Wells v. State*, 288 So.2d 860 (Miss.1974). While the denial of bail may have been unnecessary in the present case, "[t]he trial court's denial of bail is not a ground for reversal of the judgment rendered against the defendant." *Benson v. State*, 551 So.2d 188, 194-95 (Miss. 1989).

## XIV. WHETHER THE JUDGMENT IS SUPPORTED BY THE EVIDENCE.

¶47. Since we are reversing the case on other grounds and have already dealt with this issue under Issue VII, there is no reason to rule upon this matter now.

## CONCLUSION

¶48. We find the trial rife with deficiencies and reverse accordingly. The trial court committed reversible error in denying Jones's motions to suppress. The amending of the indictment to essentially alter the elements of the charge also warrants reversal of the conviction and vacating the sentence. Finally, there was no justifiable basis for refusing Jones's proposed instructions. Therefore, the judgment of the Circuit Court of Hinds County, Second Judicial District, is reversed, and this case is remanded for a new trial in harmony with this opinion.

¶49. **REVERSED AND REMANDED.**

**PITTMAN, C.J., AND MILLS, J., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY. BANKS, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J. WALLER, J., JOINS IN PART. EASLEY, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, WALLER AND COBB, JJ.**

BANKS, PRESIDING JUSTICE, CONCURRING:

¶50. I agree with the result reached by the plurality. I write separately to note that I would simply overrule what the State identifies as a contrary "line" of cases supporting the proposition that one must object to the denial of an instruction in order to preserve error.

¶51. The State cites *Ragin v. State*, 724 So. 2d 901, 906 (Miss. 1998) and *Bell v. State*, 725 So.2d

836, 860 (Miss. 1998). Both of these cases noted a "procedural" bar before disposing of these cases on the merits. There was no procedural bar. Both cases cited *Nicholson ex rel. Gollott v. State,* 672 So. 2d 744, 752 (Miss. 1996) in support of such a bar. This Court disavowed *Gollott* in *Duplantis v. State*, 708 So. 2d 1327, 1339 (Miss. 1998) before *Ragin* and *Bell* and thereafter in *Edwards v. State*, 737 So. 2d 275, 310 (Miss. 1999). No other authority supports a procedural bar. The State's suggestion that there is a contrary line of cases is then disingenuous. We should say plainly that *Gollott* and its short list of progeny are overruled in order to prevent such fallacious arguments.

**McRAE, P.J., JOINS THIS OPINION. WALLER, J., JOINS IN PART.**

**EASLEY, JUSTICE, DISSENTING:**

¶52. Donnie Newman was an officer of the law who had been a deputy sheriff for twelve to thirteen years. Newman was at a convenience store putting gas in his car when Jones called Newman to his car. As a public servant, Newman went to see if help was needed. Jones had a history of being known as a convicted felon, an inmate of Whitfield, and as being very confrontational with the police department over the death of his son. Jones confronted Newman as to why he killed his son? Newman knowing of Jones's past behavioral problems asked him to leave. Jones then proceeded to call Newman a "child killing mother f--ker." Newman stated, "Jones, I was not there when your son was killed." Jones then called Newman "a lying son of a b---h." Newman was worried about his safety as well as the safety of the public at the convenience store. Again, Newman told Jones to leave or he would have to arrest him.

¶53. Jones protruded his head through the vehicle's window and with his voice cracking and his face turning red with anger he hollered, "this is a child killing mother f--ker and a lying son of a b---h," to the people in the parking lot of the convenience store. Newman knew the situation had become hostile, and he could not just leave. As an officer of the law, Newman had a duty to protect the public and himself. He attempted to place Jones under arrest since his previous attempts to control the situation by asking him to leave had failed. Jones left Newman with no other choice. In Newman's attempt to arrest Jones, he was assaulted by Jones.

¶54. The plurality makes a critical error in stating Newman's arrest was initiated before a crime had been committed by implying Newman's sole purpose in arresting Jones was merely because he would not leave the convenience store. On the contrary, Newman was a veteran officer who was faced with an angry convicted felon yelling threatening obscenities to him and the public after he was told to leave multiple times. This was obviously a hostile situation where Jones was using fighting words to incite a breach of peace, and Newman, as any reasonable officer, felt he must control the situation by arresting Jones. Under Miss. Code Ann. § 97-35-7:

Whoever, with intent to provoke a breach of the peace, or under such circumstances as may lead to a breach of the peace or which may cause or occasion a breach of peace, fails or refuses to promptly comply with or obey a request, command, or order of the law enforcement officer, having the authority to then and there arrest any person for a violation of the law, to:

(a) Move or absent himself and any vehicle or object subject to his control from the immediate vicinity where the request, command or order is given, or

(i) Act or do or refrain from acting or doing as ordered, requested or commanded by said officer to

avoid any breach of the peace at or near the place of issuance of such order, request or command, shall be guilty of disorderly conduct....

Furthermore, pursuant to Miss. Code Ann. § 97-29-47:

If any person shall profanely swear or curse, or use vulgar and indecent language, or be drunk in any public place, in the presence of two or more persons, he shall be on conviction thereof....

¶55. According to the above referenced statute, Newman clearly had authority to arrest Jones for disorderly conduct or profanity in a public place. Therefore, a crime had been committed before the arrest, making the arrest lawful.

¶56. The United States Supreme Court has narrowed ordinances dealing with language that is vulgar, indecent, and arguably profane so that these ordinances cannot punish only spoken words, but the words must be in the scope of fighting words. *See Gooding v. Wilson*, 405 U.S. 518, 524, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). For words to be considered fighting words the United States Supreme Court has listed two criteria: (1) Such words must be directed to the person or hearer, and (2) words by their very utterance are to inflict injury or tend to incite an immediate breach of the peace. *Lewis v. City of New Orleans*, 415 U.S. 130, 133, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974); *Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). Jones's actions and language were presented directly to Officer Newman and the public. It is also clear by the profanity yelled to the public about Newman that Jones's intent was to incite an immediate breach of peace by his words. The veteran officer, as any other reasonable officer, felt a breach of peace had resulted by all the circumstances mentioned in the facts. Newman clearly had the authority to arrest Jones for his disorderly conduct or for public profanity. Therefore, there was not an unlawful arrest because Jones's crime of disorderly conduct or profanity in a public place was committed prior to his arrest.

¶57. The plurality does not even mention the crime of disorderly conduct or public profanity that Jones committed, which is critical error. This is clearly a crime committed by Jones prior to the arrest. These charges were ultimately dismissed and the charges of assault on a police officer and the carrying of a firearm by a felon were brought against him. To be legal, the warrantless arrest does not have to have been on the charge ultimately brought. *Goforth v. City of Ridgeland*, 603 So.2d 323, 326 (Miss. 1992). Therefore, even though the crime of disorderly conduct or public profanity was dropped, it was still a valid crime for an arrest.

¶58. The plurality errs by basing its decision solely on *Terry v. State*, 252 Miss. 479, 173 So.2d 889 (1965), and comparing its facts to the case sub judice. In *Terry,* law officers waited on a defendant to drive by and when he did, he was pulled over and taken out of his car. *Id*. There was no crime committed or a warrant for his arrest. *Terry* states, "a sheriff has no right to arrest a defendant unless it was evident to him a the time that some breach of the peace was being threatened or a crime was being committed in his presence." In the case sub judice, it was evident to Deputy Newman that Jones's actions of hanging his head out of the car window yelling profanity directed at Newman and the public was an attempt to incite a breach of peace and falling under the fighting doctrine. The facts in *Terry* are clearly not applicable in the case sub judice. Therefore, I respectfully dissent and decline to join the plurality's opinion that Newman's arrest was unlawful.

**SMITH, WALLER AND COBB, JJ. JOIN THIS OPINION.**