**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Alfonso Steve JIMENEZ,**
**Defendant–Appellant.**

**No. 87–2633.**

United States Court of Appeals,
Tenth Circuit.

Dec. 29, 1988.

Stephen P. McCue, Federal Public Defender, Albuquerque, N.M., for defendant-appellant.

David N. Williams, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., with him on the brief), Albuquerque, N.M., for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, ANDERSON and EBEL, Circuit Judges.

HOLLOWAY, Chief Judge.

Defendant Alfonso Steve Jimenez (Jimenez) challenges the trial court's denial of his motion to suppress a sawed-off shotgun seized from the trunk of his car by police officers during an accident investigation. The court held that the shotgun was lawfully seized because it was in plain view and would have inevitably been discovered during an inventory search. We affirm.

I

Jimenez' car was totalled in a two car accident in Albuquerque. Police officers Daniel Torgrimson (Torgrimson) and Raymond Schultz (Schultz) were called to the scene at about 11:30 p.m. on March 2, 1987. Two occupants of Jimenez' car and two or three occupants of the other car were seriously injured. Torgrimson and Schultz called a rescue squad, two ambulances and two wreckers.

Jimenez' automobile had been hit behind the back doors and the trunk lid was bent up away from the body. The trunk was locked. II R. 9, 15, 31. The damage to the trunk created a gap approximately 5 to 12 inches high and 10 inches wide so that the inside of the trunk was visible. II R. 10, 32. After the rescue squad arrived, Schultz inspected both automobiles for "gasoline or battery acid or anything leaking from the vehicles which might cause some type of hazard...." II R. 30–31. Using his flashlight (there were no lights in the trunk), Schultz looked into the trunk of Jimenez' car and saw "about 90 percent of a shotgun which had been altered or sawed off." Id. at 31–32. Schultz never asked Jimenez for permission to look into the trunk. A jack was lying across the front of the gun. Schultz testified that by its positioning he could tell that the "whole barrel wasn't there, however, [he] couldn't tell exactly how much was there." II R. 40. Schultz reached through the gap and took the gun out of the trunk. There were rounds in the magazine and the serial numbers had been filed off. II R. 33, 35–36.

The Albuquerque Police Department has a policy of inventorying the contents of towed vehicles and the contents of the interior of Jimenez' car were inventoried. II R. 14, 17, 34–36. Trunks are also inventoried if the keys are present and the owner gives permission. The trunk of Jimenez' car was either locked or inoperable because of the damage and was never opened and its contents were not inventoried. II R. 41.

One of the passengers of Jimenez' car, Romero, was known to Officer Torgrimson. Torgrimson also had information that occupants of Jimenez' car had been throwing objects over a building wall into a parking lot on the night of the accident. II R. 20. Torgrimson asked Schultz and another offi-

cer to "look for evidence in the car" and to check the vehicle. II R. 22. Torgrimson was not near the automobile when the gun was seized and neither he nor Schultz knew that it was in the trunk. II R. 22, 42.

The trial court denied Jimenez' motion to suppress. In compliance with Fed.R.Crim. P. 12(e), the court made the following findings:

> *I feel that this was a seizure which was in plain view.* I will find that an accident occurred in which the defendant's vehicle was involved, that the lid of the trunk which may or may not have remained locked, was bent in such a way that it permitted an officer who was *reasonably examining the automobile* to determine how the accident happened, to determine whether or not there was property that should be inventoried.

> *The lid was damaged in such a way that it permitted the officer to look into the trunk.* And when he shown his light, his flashlight into there, he saw this shotgun. I feel that the—and I will find that *the shotgun was in plain view and that there was probable cause to associate the property with some criminal activity because of the configuration of the shotgun.*

II R. 54–55 (emphasis added). The court also held that the shotgun would have inevitably been discovered during an inventory of the trunk. II R. 55.

After the court denied the motion to suppress, Jimenez entered a conditional plea of guilty to an information charging him with being an accessory after the fact, a violation of 18 U.S.C. § 3 (1986) in connection with unlawful possession of the sawed-off 12 gauge shotgun, *see* 26 U.S.C. § 5845(a), a violation of 26 U.S.C. § 5861(d) and § 5871. I R. 14–15. Jimenez was sentenced to three years' imprisonment with all but six months suspended, he was placed on probation for a period of three years, and a special assessment of $50 was imposed. II R. 15. He reserved his right to appeal the denial of the motion.

## II

### *Analysis*

"When reviewing the denial of a motion to suppress, the trial court's findings of fact must be accepted unless they are clearly erroneous." *United States v. Ellison,* 791 F.2d 821, 822 (10th Cir.1986) (citing *United States v. Leach,* 749 F.2d 592 (10th Cir 1984)). Since the government prevailed, we view the evidence at the suppression hearing in the light most favorable to the government. *United States v. Comosona,* 848 F.2d 1110, 1111 (10th Cir. 1988). Having considered the record and the trial court's findings,[1] we hold that the plain view doctrine provided a proper ground for seizure of the sawed-off shotgun and that the defendant's Fourth Amendment rights were not violated.

■ We note initially that this case involves a seizure and not a search. A search occurs when there is an intrusion on a legitimate expectation of privacy. *See Illinois v. Andreas,* 463 U.S. 765, 771, 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003 (1983). *See also Maryland v. Macon,* 472 U.S. 463, 469, 105 S.Ct. 2778, 2782, 86 L.Ed.2d 370 (1984). Merely inspecting the parts of an object that come into view lawfully does not constitute a search. *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 1152, 94 L.Ed.2d 347 (1987). *See also Texas v. Brown,* 460 U.S. 730, 738–740 n. 4, 103 S.Ct. 1535, 1541–1542 n. 4, 75 L.Ed.2d 502 (1982) (plurality opinion). Schultz was routinely inspecting Jimenez' automobile when the sawed-off shotgun came into view. No search occurred. The question is whether the seizure of the shotgun which followed violated the Fourth Amendment.

■ In *Coolidge v. New Hampshire,* 403 U.S. 443, 468, 91 S.Ct. 2022, 2039, 29 L.Ed. 2d 564 (1971) (plurality opinion of Stewart, J., joined by Douglas, Brennan, and Marshall JJ.), the plurality view was expressed that the plain view doctrine permits the warrantless seizure by police of private possessions where three requirements are

---

1. The trial judge's findings on the motion to suppress were stated in detail and in full compliance with Fed.R.Crim.P. 12(e) and have facilitated consideration of this appeal.

satisfied. The requirements have been stated as follows:

First, the police officer must lawfully make an "initial intrusion" or otherwise properly be in a position from which he can view a particular area. *Id.*, at 465–468 [91 S.Ct. at 2037–2038.] Second, the officer must discover incriminating evidence "inadvertently," which is to say, he may not "know in advance the location of [certain] evidence and intend to seize it," relying on the plain-view doctrine only as a pretext. *Id.*, at 470 [91 S.Ct. at 2040.] Finally, it must be "immediately apparent" to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure. *Id.*, at 466 [91 S.Ct. at 2038.]

*Texas v. Brown*, 460 U.S. at 737, 103 S.Ct. at 1540. *See also United States v. Justice*, 835 F.2d 1310, 1312 (10th Cir.1987) (quoting *United States v. Gabriel*, 715 F.2d 1447, 1449–1450 (10th Cir.1983)).

The first requirement of the doctrine—that the initial intrusion be lawful or that the officer properly be in a position from which he can view a particular area—is clearly satisfied. The trial court found that the trunk was bent in such a way that "it permitted an officer who was *reasonably examining the automobile* to determine how the accident happened, to determine whether or not there was property that should be inventoried." II R. 54 (emphasis added). The record supports this finding. Schultz said that he was checking both vehicles for gasoline or an overturned battery when he discovered the sawed-off shotgun. II R. 30–32. He was investigating the accident and was lawfully in a position from which he could view the inside of the trunk. Moreover, the use of the flashlight to illuminate Jimenez' trunk "trenched upon no right secured to [Jimenez] by the Fourth Amendment." *Texas v. Brown*, 460 U.S. at 739–740, 103 S.Ct. at 1541–1542; *see also United States v. Lee*, 274 U.S. 559, 563, 47 S.Ct. 746, 748, 71 L.Ed. 1202 (1927).

The record also supports the court's findings on the second prong of the plain view doctrine which requires inadvertent discovery. *See Texas v. Brown*, 460 U.S. at 737, 103 S.Ct. at 1540. The court found that the officer was reasonably examining the car to determine how the accident happened and whether property should be inventoried; the trunk lid was damaged so that he could look into the trunk and he flashed his light into it and saw the shotgun. II R. 54–55. Schultz testified that he was "looking to see if there was either a gas leakage or batteries which had turned over." II R. 33. He further testified that until he looked into the trunk he had no reason to believe that there was a gun there. II R. 42. The record clearly supports the conclusion that Schultz discovered the sawed-off shotgun inadvertently.

Jimenez argues that Torgrimson knew Romero and that Torgrimson ordered Schultz to check the vehicle and that the plain view doctrine is being employed here as a pretext. *See Texas v. Brown*, 460 U.S. at 737, 103 S.Ct. at 1540. But the record does not in any way indicate that the discovery of the sawed-off shotgun was not inadvertent or that the plain view doctrine is being employed here only as a pretext. In fact, Torgrimson never looked into the trunk himself; he was attending to other matters. II R. 22. Although he asked Schultz to check the vehicle, *see* II R. 22, there is no evidence in the record to suggest that he or Schultz knew of the location of the sawed-off shotgun and intended to seize it. II R. 22, 42. The sawed-off shotgun was discovered inadvertently.

Finally, there is evidence to support the trial court's conclusion that "there was probable cause to associate the property with some criminal activity because of the configuration of the shotgun." *Hicks*, 107 S.Ct. at 1149 (probable cause is required to invoke plain view doctrine); *Texas v. Brown*, 460 U.S. at 730, 738, 103 S.Ct. at 1537, 1541 (the seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity). Schultz testified that when he looked into the trunk he could see 90 percent of the gun. Although he could not see exactly how long

the barrel was "per se" because there was a jack lying across the front of the gun, he knew the whole barrel wasn't there. II R. 40. Schultz said that he knew "by the way the jack was laying that the barrel was not of normal length." II R. 45. Schultz said that when he "looked in immediately, he could see the receiver, the barrel next to the receiver and the stock that had been cut off." II R. at 44–45. Schultz knew as a policeman that it was "against the law to have sawed-off shotguns...." II R. 45.

"[P]robable cause is a flexible, common sense standard." *Texas v. Brown,* 460 U.S. at 742, 103 S.Ct. at 1543. It merely requires that the facts available to the officer would warrant a man of reasonable caution having a belief that certain items may be contraband, or stolen property, or useful as evidence of a crime; "it does not demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown,* 460 U.S. at 742, 103 S.Ct. at 1543. The rule of probable cause is a practical, nontechnical concept. *See Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). While Schultz could not see the entire barrel of the gun, there is sufficient evidence that he could tell, before he reached into the trunk, that the stock had been cut off and the barrel was not of normal length. The court's finding that there was probable cause to associate the property with some criminal activity because of the configuration of the shotgun is not clearly errroneous. II R. at 54–55.

The sawed-off shotgun was in plain view and was lawfully seized from the damaged trunk of Jimenez' car. We uphold the trial court's denial of the motion to suppress on this basis and need not address the court's alternative holding that the seizure was lawful under the inevitable discovery doctrine. *See Nix v. Williams,* 467 U.S. 431, 440–441, 448, 104 S.Ct. 2501, 2507–2508, 2511 (1983).

AFFIRMED.