**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 10 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA

Plaintiff-Appellee,

v.

WILLIAM GEORGE CURRIER,

Defendant-Appellant.

No. 99-4037
(D. C. No. 97-CR-365-S)
(District of Utah)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **McKAY**, and **HENRY**, Circuit Judges.

William George Currier appeals the district court's order denying his motion to suppress evidence seized during an automobile search. For the reasons set forth below, we conclude that Mr. Currier's failure to file specific objections to the magistrate judge's report and recommendation constitutes a waiver of appellate review. We therefore dismiss this appeal.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I. BACKGROUND

The government charged Mr. Currier with possession with the intent to distribute in excess of one hundred grams of a mixture containing a detectable amount of methamphetamine, a violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).  Prior to trial, Mr. Currier filed a motion to suppress evidence obtained during a November 4, 1997 traffic stop of the automobile that he was driving on I-15 in Juab County, Utah.  After the district court denied the motion, Mr. Currier entered a conditional guilty plea.  The court sentenced him to fifty seven months' imprisonment.

Evidence introduced at the hearing on Mr. Currier's motion to suppress revealed that, on the morning of November 4, 1997, Sergeant Paul V. Mangelson of the Utah Highway Patrol observed an automobile driven by Mr. Currier traveling at 82 miles per hour in a 75 miles per hour zone.  Sergeant Mangelson stopped the automobile and asked Mr. Currier for his license, registration, and destination.  Mr. Currier  produced an Idaho driver's license but could not produce the registration.  He stated that he was going to Kalispell, Montana.

As he questioned Mr. Currier, Sergeant Mangelson noticed a small can on the back seat.  The videotape of the traffic stop indicates that he reached through the open rear window of the automobile, grabbed the can, and asked Mr. Currier what it was.  Mr.

Currier responded that it was air freshener.[2]

On the dashboard, Sergeant Mangelson also noticed a plastic box that contained a glass tube. Based on his experience, Sergeant Mangelson thought that the tube was one of the kind used for snorting drugs, and he asked Mr. Currier what it was. Mr. Courier denied knowing anything about the contents of the box and said that it did not belong to him.

Sergeant Mangelson then told Mr. Currier that he would like to look at the tube. Mr. Currier first reached for another item in the box. When Sergeant Mangelson told him that that was the wrong item, Mr. Currier picked up the tube and handed it to him. When Mr. Currier opened the glove compartment to looked for the registration papers, Sergeant Mangelson observed three additional cans of air freshener.

According to Sergeant Mangelson's testimony at the suppression hearing, Mr. Currier's face was flushed and his eyes looked glazed. He believed that Mr. Currier was impaired, but he did not smell alcohol. Sergeant Mangelson asked Mr. Currier if he was using drugs, and Mr. Currier said that he was not.

Sergeant Mangelson also asked Mr. Currier if he could look in the car. Mr. Currier said that he would not mind. Sergeant Mangelson then directed Mr. Currier to get

---

[2] Although the magistrate judge found that Sergeant Mangelson did not pick up the can of air freshener, see Rec. vol. I, doc. 31, at 9 (hereinafter "Report and Recommendation"), the government, refreshingly, concedes in its appellate brief that "from the videotape [of the traffic stop] it appears as if Mangelson did pick and replace the air freshener." Aplee's Br. at 4. n.2.

out of the automobile.  After Mr. Currier complied, the Sergeant conducted a patdown search.

When searching the vehicle, Sergeant Mangelson found two glass tubes resembling the one that he had first noticed.  He asked if these tubes were crack pipes and if Mr. Currier was using crack or some other drug.  Mr. Currier denied using drugs and said that the pipes were candle holders.  The Sergeant then noticed a bottle in the front of the car.  He opened it and saw a powdery substance that smelled like methamphetamine.  He asked if the substance was speed, and Mr. Currier admitted that it was.

Sergeant Mangelson placed Mr. Currier under arrest.  He first gave him an incomplete Miranda warning:  informing him that he had a right to remain silent and that anything he said could be used against him but, failing to mention Mr. Currier's right to an attorney.  See Miranda v. Arizona, 384 U.S. 436, 444-45 (1966).  A continued search of the automobile's passenger compartment, trunk, and engine revealed additional glassware, a carton of bottles containing methamphetamine, and a cup containing cocaine.

After the incomplete Miranda warning, Mr. Currier made several inculpatory statements.  The magistrate judge found that "[t]he statements were not coerced but in a bantering conversational mode."  Report and Recommendation at 11.  Following a computer check of Mr. Currier's record (which revealed no outstanding warrants), Sergeant Mangelson read a second Miranda warning to Mr. Currier.  Unlike the earlier Miranda warning, this second warning advised Mr. Currier that he had a right to speak

4

with an attorney and contained the other necessary information.

In his motion to suppress the evidence obtained from the traffic stop, Mr. Currier advanced the following arguments: (1) the detention following the initial stop violated the Fourth Amendment, because Sergeant Mangelson lacked reasonable suspicion to inquire about matters other than the speeding violation and ownership of the automobile; (2) he did not voluntarily consent to the search of the automobile; (3) in light of these Fourth Amendment violations, all of his statements to Sergeant Mangelson should be suppressed; and (4) in light of the initial, defective Miranda warning, his statements preceding the second Miranda warning should be suppressed.

A magistrate judge conducted a hearing on Mr. Currier's motion and rejected all but the last argument. As to the detention of Mr. Currier, the magistrate pointed to a number of circumstances that justified further inquiry by Sergeant Mangelson: the failure to produce a valid registration, the air freshener on the back seat and in the glove compartment, the glass tube, and the fact that Mr. Currier appeared to be impaired. The magistrate therefore found that the initial detention was reasonable. He further found that Sergeant Mangelson acted reasonably in conducting a patdown search of Mr. Currier after he stepped out of the automobile and that Mr. Currier had voluntarily consented to the search of the passenger compartment, trunk, and engine.

As to Mr. Currier's statements, the magistrate judge placed them in three categories: (1) statements before Mr. Currier was arrested, (2) statements following the

5

deficient <u>Miranda</u> warning, and (3) statements following the second (sufficient) <u>Miranda</u> warning. As to the first category (prearrest statements), the magistrate judge found them to be voluntary and therefore admissible. As to the second category, the magistrate concluded that those statements should be suppressed because of the inadequate <u>Miranda</u> warning.

In contrast, as to the third category of statements, the magistrate judge found that they were admissible if they were made voluntarily:

> In <u>Oregon v. Elstad</u>, [470 U.S. 298 (1985)], the Supreme Court held where there had been a prior violation of <u>Miranda</u> requirements, by a failure to give a proper warning, that a subsequent proper and complete warning will suffice to meet <u>Miranda's</u> requirements as to any further interrogation as long as the first statements were not involuntary. That is the case in this situation. There was a prior inadequate warning and, thereafter, at one point, Mangelson asked defendant if he understood his rights and defendant replied affirmatively. No threats or other misconduct took place after the arrest to the time of the second, and first proper, preinterrogation warning that would make the statements of defendant involuntary. Therefore <u>Elstad</u> is applicable and statements made following the second and proper warning are admissible if they were voluntary.

Report and Recommendation at 21. (citations omitted).

Applying <u>Elstad</u>, the magistrate concluded that the statements following the second <u>Miranda</u> warning were voluntary and therefore admissible. <u>See id.</u> at 22-23 ("In this case, the questioning was at roadside, no threats, coercion or intimidation was involved. The interrogation was conversational. When the statements of the defendant are considered under the totality of the circumstances, the events do not show the defendant's free will

6

was overcome by police coercion or misconduct.") (citations omitted).

Accordingly, the magistrate judge concluded that the motion to suppress should be granted as to the statements made between the first and second <u>Miranda</u> warnings and denied in all other respects. Mr. Currier then filed a short objection, which stated:

> The defendant, William Currier, by and through his attorney, . . . hereby objects to the report and recommendation of Magistrate Judge Boyce dated July 13, 1998. This objection includes, but is not limited to, some of the Court's findings of fact, the Court's conclusions that the detention was legal, that the consent to search was voluntary and the evidence uncovered was properly seized and that certain statements by defendant are admissible.
> Defendant Currier requests that this matter be considered de novo.

<u>See</u> Aplee's Br., Attach. A.

The district court issued an order noting that Mr. Currier had filed only a general objection. Nevertheless, the court reviewed the magistrate's report and recommendation de novo and adopted it as its opinion.

## II. DISCUSSION

On appeal, the government first argues that Mr. Currier has waived appellate review of the denial of his motion to suppress by failing to file specific objections to the magistrate's report and recommendation. The government cites circuit precedent holding that the failure to file specific objections constitutes a waiver.

Rule 72 of the Federal Rules of Civil Procedure provides that when a magistrate judge issues a ruling on a dispositive pretrial motion, a party has ten days after service to

7

"serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b). Upon the filing of such an objection, the district court must "make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule." Id.

In United States v. 2121 East 30th Street, 73 F.3d 1057, 1060 (10th Cir. 1996), this circuit held that the failure to file a specific objection to a magistrate judge's report and recommendation constitutes a waiver of appellate review:

> To further advance the policies behind the Magistrate's Act, we, like numerous other circuits, have adopted a firm waiver rule that provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions.
>
> . . . .
>
> Although we have not previously addressed whether a general objection is sufficient, a number of other circuits have addressed the issue and have concluded that a general objection will not avoid application of the waiver rule.
>
> . . . .
>
> We agree with these holdings of our sister circuits, because only an objection that is sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute will advance the policies behind the Magistrate's Act that led us to adopt a waiver rule in the first instance. Therefore, we hold that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review.

8

2121 East 30th Street, 73 F.3d at 1059-60 (10th Cir. 1996) (emphasis added) (internal citations and quotations omitted); see also Soliz v. Chater, 82 F.3d 373, 375-76 (10th Cir. 1996) (concluding that an objection stating that an agency's findings "are not based on substantial evidence" lacked the specificity necessary to preserve appellate review).

We have recognized an exception to this rule: "[t]he waiver rule as a procedural bar need not be applied when the interests of justice so dictate." Moore v. United States, 950 F.2d at 656, 659 (10th Cir. 1991). However, we have characterized this interests of justice exception as "very narrow." United States v. Williams, No. 98-4112, 1999 WL 485241 (10th Cir. July 12, 1999), at **2; see also Moore, 950 F.2d at 659 (declining to apply the waiver rule when the magistrate judge's report and recommendation did not inform a pro se litigant of the consequences of failing to object).

Here, Mr. Currier's attorney has failed to comply with the specific objection requirement established by Fed. R. Civ. P. 72 and circuit precedent. His objection to "some of the [magistrate judge's] findings of fact, the Court's conclusions that the detention was legal, that the consent to search was voluntary and the evidence uncovered was properly seized and that certain statements by the defendant are admissible," see Aplee's Br. Attach. A, did not provide the district court with meaningful notice as to the particular errors that the magistrate judge allegedly committed. The objection is not "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." 2121 East 30th Street, 73 F.3d at 1060.

9

Moroever, upon review of the record, we conclude that the interests of justice do not indicate that Mr. Currier should be excused from the waiver rule. Unlike the party in Moore (who escaped application of the waiver rule), Mr. Currier was represented by counsel. Moreover, the magistrate judge's report and recommendation stated that a failure to file objections "may constitute a waiver of those objections on subsequent appellate review." See Report and Recommendation, at 23-24.

Additionally, our examination of the record and the applicable law reveals no fundamental errors in the magistrate judge's report and recommendation. We will briefly explain the basis for that conclusion as to each of the arguments advanced by Mr. Currier in this appeal: (1) his challenge to the length and scope of the detention following the initial stop; (2) his argument that he did not voluntarily consent to the search of the automobile; (3) his argument that, in light of these Fourth Amendment violations, all of his statements to Sergeant Mangelson should be suppressed; and (4) his argument that, in light of the initial defective Miranda warning, his statements preceding the second Miranda warning should be suppressed.

With regard to the initial stop and detention, we have one noteworthy concern. The videotape of the stop reveals that Sergeant Mangelson reached into an open backseat window and grabbed a can of air freshener. At that point in the stop, there is no indication that Sergeant Mangelson had probable cause to conclude that a crime had been committed. Thus, his seizure of the can of air freshener appears unwarranted. See Payton

10

v. New York, 445 U.S. 573, 587 (1980) ("The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity."); United States v. Jiminez, 864 F.2d 686, 689-90 (10th Cir. 1988) (affirming district court's finding of probable cause that a shotgun was associated with criminal activity, because a police officer had observed that the gun did not have a normal-length barrel).

Nevertheless, excluding the can of air freshener in the back seat from consideration, Sergeant Mangelson's other observations (the missing registration, the cans of air freshener in the glove compartment, the glass tube, and Mr. Currier's impaired appearance) support the magistrate judge's conclusion that Sergeant Mangelson had the reasonable suspicion necessary to justify further inquiries.

Similarly, even assuming that Seargeant Mangelson improperly seized the air freshener from the back seat, the magistrate judge's conclusion that Mr. Currier voluntarily consented to the search of the automobile evinces no fundamental errors in considering the record or applying the law. "A search preceded by a Fourth Amendment violation remains valid if the consent was voluntary in fact under the totality of the circumstances." United States v. Fernandez, 18 F.3d 874, 881 (10th Cir. 1994). Under this "totality of the circumstances" approach, no single fact is dispositive. See id. at 882. However, the three factors articulated in Brown v. Illinois, 422 U.S. 590 (1975), are relevant: "the temporal proximity of the illegal detention and the consent, any intervening

11

circumstances, and, particularly, the purpose and flagrancy of the officer's unlawful conduct." United States v. Walker, 933 F.2d 812, 818 (10th Cir. 1991) (citing Brown, 422 U.S. at 603-04).

Here, the unwarranted seizure of the can of air freshener occurred during an otherwise lawful stop and detention. The seizure extended the detention for only a few seconds, and information that Sergeant Mangelson obtained from that item was also revealed by independent sources (e.g., the cans of air freshener in the glove compartment, which were not improperly seized). In these circumstances, the magistrate judge reasonably concluded that Mr. Currier's consent to the search was valid.

The magistrate judge's conclusions as to why Mr. Currier's statements should not be suppressed are also reasonable. Although those statements were preceded by one apparently improper action by Sergeant Mangelson (the seizure of the air freshener from the back seat), that one action in the midst of a proper detention is not sufficient to taint all of Mr. Currier's statements.

The magistrate's disposition of Mr. Currier's final argument is also supported by the record and the applicable law. The magistrate reasonably concluded that the voluntariness of the statements following the deficient warning rendered admissible the statements made after the second, adequate warning. See Oregon v. Elstad, 470 U.S. at 304, 309; United States v. McCurdy, 40 F.3d 1111, 1116-17 (10th Cir. 1994) (discussing Elstad's holding that "[i]f the unwarned statement was voluntary, and the allegedly

12

tainted second statement was also voluntary, the second, warned statement is admissible" since "[t]he Fifth Amendment . . . prohibits only the use of compelled testimony") (quoting United States v. Wiley, 997 F.2d 378, 383 (8th Cir. 1993) (alteration in original)).

Accordingly, we conclude that the interests of justice do not support the application of an exception to the waiver rule. As a result, by failing to file specific objections to the magistrate judge's Report and Recommendation, Mr. Currier waived appellate review.

### III. CONCLUSION

For the reasons set forth above, we DISMISS Mr. Currier's appeal.


Entered for the Court,

Robert H. Henry
United States Circuit Judge